**Frank E. Lindgren, et al., Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 53,731.**

First District, Fourth Division.

May 13, 1970.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Marvin E. Aspen and Stuart Sikevitz, Assistant Corporation Counsel, of counsel), for appellant.

John J. O'Toole, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant, City of Chicago, appeals from a judgment which declared its zoning ordinance invalid and unenforceable as applied to plaintiffs' property and which ordered defendant to issue the necessary permits for the construction of a six-unit apartment building.

In their complaint plaintiffs allege that they are the owners of two lots located on the northeast corner of 3633–35 North Narragansett. The subject property has a depth of 125 feet and a frontage of 48 feet, with a total lot area of 6,000 square feet. The property is currently zoned R2, single-family residence district. The complaint further alleges that plaintiffs have been deprived of their property without due process of law and without just compensation and that the highest and best use of the subject property is for the development of a six-unit apartment building which would comply with all of the requirements of an R4, general residence district classification.

Defendant's answer denied that the highest and best use of the subject property was for a six-unit apartment building under an R4 classification and prayed that the present R2 classification be held constitutional as it pertained to the subject property.

At trial, Frank Lindgren, one of the plaintiffs, testified that he was familiar with the area surrounding the subject property. Starting with Addison Street, one block south of the subject property, and going north on Narragansett on the east side of the street there are four stores. These stores are located in a B2–1, restricted retail district zone. Immediately next to the last store at 3617 Narragansett there is a building with two apartments, then at 3619 a building with one apartment, at 3621 a building with two apartments, and finally on the southeast corner of Narragansett and Patterson at 3625 there is a building with three apartments. The property on which these four buildings are located is zoned R2.

Directly north of the subject property, on the east side of Narragansett, there are two Georgian homes and then three single-family dwellings going up to Waveland Avenue. Beginning on the northeast corner of Waveland and

Narragansett, at 3701 Narragansett, there is a single-family dwelling, 3707 is two apartments, 3711 is two apartments, 3715 is two apartments, 3721 is a single-family dwelling, and 3725 is a single-family dwelling. At 3735 Narragansett, on the northeast corner of Narragansett and Warwick, there is a Greek Church, then a single-family residence at 3739, a single-family residence with a store at 3743, at 3749 there is a two-apartment building, 3751 is a single-family dwelling, and the building at 3755 contains three apartments.

On the northeast corner of Grace and Narragansett, going north on Narragansett to Bernice, there is a single-family dwelling at 3801, two apartments at 3803, two apartments at 3807, a single-family residence at 3811, two apartments at 3813, two apartments at 3817, and a store at 3825. At 3835 and 3839 Narragansett there are six-flat apartment buildings and at 3857 Narragansett there is an eight-flat apartment building. However, these three multiple-unit buildings are located in a C1–1, restricted commercial district zone which permits the construction of dwelling units.

At Addison Street, going north, on the west side of Narragansett to Dakin Street there are two cemeteries.

On the southeast corner of Addison and Narragansett there is a nine-flat apartment building and one block further south, at Narragansett and Eddy, there is a six-flat apartment building. These buildings are located in an R4, general residence district zone.

East of the subject property on Patterson there are several properties with more than one family. The buildings at 6303, 6304, 6316, 6323, 6337 and 6343 all have two apartments each.

Mr. Lindgren further testified that he never had a conversation with any of the people living at any of the alleged multiple-dwelling apartments. He determined that these buildings were multiple dwellings by the listing of names on the polling lists and in the directory and because

they had two electric meters and more than one mailbox. He never checked the building permits for any of these buildings. He did not know if any of the people living in these buildings were related.

Mr. Lindgren further testified that he and his partners purchased the subject property in October 1966 for $19,-500. At that time he knew that it was zoned R2, single-family.

Ralph Burnke testified for the plaintiffs. He is a licensed real estate broker. The subject property was listed with him for sale, but he was unable to sell the property. In his opinion the value of the property under the present R2 zoning is $12,500. If the property were developed as a six-flat building the value would be $25,000. Furthermore, in his opinion, anyone who paid $19,500 in 1966 for the subject property paid too much.

John McNamara also testified for the plaintiffs. He is a real estate broker and appraiser and has been in the real estate business for 42 years. He is familiar with the subject property and the area surrounding it. Just to the north of the subject property are two Georgian single-family dwellings that had dormers built upstairs. The same was also true for several homes between Waveland and Warwick on Narragansett and on Patterson east to Mobile. At the southeast corner of Patterson and Narragansett and going south there are several single-family homes topped off with dormers. The homes with dormers had two electric fuse boxes in the back. He did not check the doorbells nor the interiors of any of these homes.

Narragansett is a heavily travelled street with a bus line and most recent development on arterial streets has been away from single-family construction. In his opinion the construction of a six-flat building would not have a deleterious effect on the surrounding property.

In his travels around the vicinity of the subject property the only new developments in the area were for mul-

tiple-family use. In his opinion the value of the subject property under the present R2 zoning is $10,000. If the property were developed as R4 under the proposed development, the value would be $20,000 to $22,000. The highest and best use of the subject property would be to develop it under an R4, general residence district zone.

Edward Lake testified for the defendant. He lives at 3641 North Narragansett, directly north of the subject property. When he purchased his property he relied upon the R2 single-family classification. All of the buildings on the block are single-family residences.

Richard McKinnon also testified for the defendant. He is a city planner and has been employed by the City of Chicago as a city planner for twelve years. He described the buildings in the area as follows: Immediately north of the subject property there are two single-family Georgians, followed by three single-family bungalow homes. Going south from the subject property on the east side of Narragansett there are two-family homes at 3625 and 3621 and then two single-family homes at 3619 and 3617. The zoning then changes from R2 to B2–1, restricted retail district. The building at 3625 was converted to a two-family home. However, this conversion had to be illegal.

Beginning at 3701 Narragansett, which is the northeast corner of Narragansett and Waveland, there is a single-family home followed by a three-family home at 3707, two two-family homes and then two single-family homes. The three-family home at 3707 is a legal nonconforming use, as are the two two-family homes at 3711 and 3715.

Two six-flat apartment buildings have been constructed at 3835 and 3837 North Narragansett and an eight-flat was permitted to be erected at 3857 North Narragansett within the last five years. However, these buildings, located between Bernice and Byron Streets, are in a C1–1,

restricted commercial district zone. They are approximately two and one-half blocks from the subject property.

Going north from Eddy on Narragansett, two blocks south of the subject property, there has been one single-family home built within the last five years. Otherwise there are only multiple-apartment buildings between Eddy and Addison. However, this area is zoned R4, general residence district.

Mr. McKinnon further testified that in his opinion the highest and best use of the subject property would be the continuation of the present R2 single-family zone district; that plaintiffs' proposed use would affect the character of the neighborhood by opening a wedge into the predominantly single-family neighborhood for apartment construction and that where there is a predominantly single-family area, the higher density of a six-unit apartment building would be incompatible with the existing single-family density.

Opinion

█ Defendant contends that the plaintiffs failed to overcome the presumptive validity of its zoning ordinance. There is a presumption in favor of the validity of a zoning ordinance and the one challenging its validity has the burden of overcoming this presumption with clear and convincing proof. Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201; Menolascino v. Village of Franklin Park, 106 Ill App2d 472, 246 NE2d 122; and Duryea v. City of Rolling Meadows, 119 Ill App2d 445, 256 NE2d 32. To meet this burden plaintiffs attempted to show the variation in the value of the subject property under different zoning classifications, the existing uses and recent development of the surrounding property, and the highest and best use of the subject property. Plaintiffs claim that the combination of these factors establishes the invalidity of defendant's present R2 single-family zone as applied to its property.

■ Plaintiffs' evidence shows that the subject property would have a greater value if its proposed R4 zone use were allowed. While the value of the property is a factor to be considered in determining the reasonableness of defendant's zoning ordinance, it is not of itself sufficient to invalidate the present single-family ordinance. River Forest State Bank & Trust Co. v. Village of Maywood, 23 Ill2d 560, 179 NE2d 671 and Bluhm v. City of Chicago, 110 Ill App2d 136, 249 NE2d 108.

■ Plaintiffs also contend that the actual utilization and recent development of the surrounding property is not in conformity with the restrictive single-family use imposed upon its property. In determining the validity of a zoning ordinance the question of whether or not the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established is considered highly important. River Forest State Bank & Trust Co. v. Village of Maywood, supra, and Wehrmeister v. County of DuPage, 10 Ill2d 604, 141 NE2d 26. The subject property is currently zoned R2, single-family residence district. The R2 zone begins at 3617 North Narragansett and extends north to midway between Grace and Bernice Streets at approximately 3838 North Narragansett. The zone runs east from Narragansett to Central Avenue. Directly west of the subject property, running from Addison, north to Byron are two cemeteries which are zoned R2. Therefore, the entire area immediately contiguous to the subject property is zoned R2.

Defendant argues that plaintiffs failed to prove by clear and convincing evidence that the uses in the area are not single-family and that plaintiffs' proposed six-flat building would be inconsistent with the character of the uses in the surrounding area.

■ Plaintiffs' evidence shows that thirteen buildings on Narragansett, beginning at Addison, are single-family dwellings, as well as several buildings on Patter-

son immediately east of the subject property. As to the remaining structures on Narragansett and Patterson, within the R2 zone, plaintiffs have attempted to show that they are two-family or multiple-use buildings. They based their findings on several factors: (1) people with different last names live in these buildings; (2) most of the buildings have had dormers built on them; and (3) the buildings have more than one electric meter or mailbox. However, at trial plaintiffs' witnesses admitted that they had no knowledge as to the relationship between any of the people living in these alleged multiple dwellings, nor had they spoken to any of these people or ever been inside any of the buildings within the R2 zone. The Chicago Zoning Ordinance (Municipal Code of Chicago, 1969, c 194A, § 3.2) defines "family" as:

> A "family" consists of one or more persons each related to the other by blood (or adoption), together with such blood relatives' respective spouses, who are living together in a single dwelling and maintaining a common household. A "family" includes any domestic servants and not more than one gratuitous guest residing with said "family."

A "family" can include blood relatives, their spouses, domestic servants and a gratuitous guest, in addition to the principal residents who are related to each other by blood or adoption. Neither different last names nor more than one electric meter or mailbox are clear and convincing evidence of a use as multiple-family residences. Therefore, there is no adequate proof that many of the alleged two-family uses were not actually single-family homes under the ordinance.

According to defendant's evidence some of the alleged multiple-family buildings referred to by plaintiffs were legal nonconforming uses. In Jacobson v. Village of Wilmette, 403 Ill 250, 256, 85 NE2d 753, the court defined a nonconforming use:

A "nonconforming use" is defined by the ordinances to be a building or premises occupied by use that does not conform to the regulations of the use district in which it is situated. The ordinances provide, however, that the lawful use of a building or premises existing at the time of the adoption of the ordinance may be continued, although such use does not conform to the provisions thereof, and such use may be extended throughout the building or premises.

Arden H. Rathkopf in his work, the Law of Zoning and Planning, Volume 2 (3 ed 1966) at 62–1 states that the spirit and intent of zoning is to restrict and eventually eliminate nonconforming uses.

Nonconforming uses and structures are, by definition, alien to the homogeneity of a district created under a zoning ordinance enacted in accordance with a comprehensive plan. They were originally tolerated and protected to the extent of their scope and existence at the time of passage of the zoning ordinance because it was considered necessary so to preserve them in order to render the ordinance constitutional, the powers of the municipality in relation to zoning then being only partially realized. Moreover, from the beginning of zoning it was assumed that:

"the ultimate ends of zoning would be accomplished as the nonconforming uses terminated in time,"

by obsolescence, destruction or similar factors and that thereby the objectives of the zoning ordinance classification would be achieved.

Because nonconforming uses and structures, so long as they exist, prevent the full realization of the

zoning plan, the spirit of zoning is, and has been, to restrict, rather than increase, such nonconformities and to eliminate such uses as speedily as possible.

Defendant's expert witness also stated that the building at 3625 North Narragansett, directly south of the subject property, was illegally converted to a two-family home. In County of DuPage v. Henderson, 402 Ill 179, 188, 83 NE2d 720, the court found that:

> The fact the ordinance permitted a large number of uses within the district, which the appellants deemed more detrimental to the people and their property, can neither diminish nor enlarge their defense, for those other uses are not theirs. The fact that non-permissive uses are carried on by others contrary to the ordinance neither fortifies nor weakens the case of appellants, but each alleged violation of the ordinance is a complete case within itself and must stand or fall upon the facts and circumstances of that case alone. . . . The presumption of the validity of that classification must be overcome by proof made by defendants which is clear and convincing. (City of Springfield v. Vancil, 398 Ill 575.) The defendants have not supplied the proof required.

See also Exchange Nat. Bank of Chicago v. Village of Skokie, 86 Ill App2d 408, 229 NE2d 913.

In our opinion neither the several legal nonconforming uses nor the illegal conversion should be used as a wedge by plaintiffs for declaring defendant's present R2 zoning ordinance arbitrary and void. The defendant has not purposefully allowed any intrusion into the solid R2 zone immediately surrounding the subject property. While there are multiple dwellings located on Narragansett from Addison south to Eddy, these buildings are in an R4, general residence district zone. Furthermore, the three

recently constructed multiple-dwelling units at 3857, 3839 and 3835 North Narragansett are in a C1–1, restricted commercial district zone.

 Finally, plaintiffs contend that the highest and best use of the subject property would be for a six-unit apartment building while defendant argues that a continuation of the present R2 zoning is the highest and best use. As this court stated in Manger v. City of Chicago, 121 Ill App2d 358, 257 NE2d 473:

> The determination of a zoning classification is a legislative rather than a judicial function, and where there is a legitimate difference of opinion concerning the reasonableness of the classification, or where the question of reasonableness is fairly debatable, the courts will not and cannot interfere with legislative judgment, nor carve out and rezone a portion of a tract of land. Bredberg v. City of Wheaton, 24 Ill2d 612, 182 NE2d 742 (1962).

The judgment is reversed.

Reversed.

STAMOS, P. J. and ENGLISH, J., concur.