DEVON BANK, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 58366;

First District (2nd Division)—January 7, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

No appearance for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

On 22 December 1970, plaintiffs-appellees (hereinafter plaintiffs), Devon Bank as trustee under Trust No. 2003 and David and Goldie Schultz as beneficiaries under the said trust, brought this declaratory judgment action against defendant-appellant (hereinafter defendant), City of Chicago, seeking a judgment that the minimum lot area provision of the R3 General Residence District Zoning classification of the Chicago Zoning Ordinance is unconstitutional as applied to plaintiffs' property. Plaintiffs' property, a vacant lot at 1813-15 W. Lunt Avenue in Chicago, is situated in a district zoned as "R3, General Residence District" under the 1957 comprehensive amendment of the Chicago Zoning Ordinance. Among the uses permitted under this classification are multiple-family dwellings. Plaintiffs propose to develop the property by erecting two buildings of five townhouses each, for a total of 10 dwelling units. The property has a total frontage of approximately 88.65 feet and a depth of approximately 170.33 feet for a total area of 15,100 square feet. However, the minimum lot area requirement for property zoned R3 is not less than 2,500 square feet of lot area per dwelling unit. Hence, plaintiffs are restricted by the ordinance to a maximum of six dwelling units on their property.

On 31 July 1972, after hearing the evidence presented as to the constitutionality of the R3 classification as applied to plaintiffs' property, the trial court made findings of fact, declared the Chicago Zoning Ordinance as applied to plaintiffs' property null and void, and declared that plaintiffs may use their premises to build a townhouse compound to contain 10 dwelling units with provision on the premises for one parking space per unit, the development to comply in all other respects with the Building Code of Chicago and with the R4 General Residence District provisions of the Chicago Zoning Ordinance.

Defendant's appeal from the above order raises the issue of whether plaintiffs have presented sufficient evidence to support the invalidation of the present R3 zoning ordinance as applied to their property.[1] To resolve this issue we turn to the trial record for the testimony bearing on the constitutionality of the R3 classification.

Aldin Mose, a licensed real estate broker familiar with the Rogers Park area, testified for plaintiffs that plaintiffs' property is located on the south side of W. Lunt Avenue, in the block immediately west of the North Western Railroad line in the West Rogers Park area. This area is approximately 60 to 70 years old and is developed principally with single-family homes. In the 1920s, however, numerous apartment buildings were lawfully erected in the vicinity. Since then, the few residences that have been erected in the area have been mainly apartments. The witness examined several photographs depicting the neighborhood and testified as to many frame houses and some apartment buildings and townhouses in the immediate vicinity. The frame houses in the same block to the west of plaintiffs' property are older houses tending toward obsolescence. Obsolescence means that they are deteriorating and that maintenance work is not being done. These houses are very large and are expensive to heat and maintain. In this witness' opinion, the building of townhouses on plaintiffs' property would upgrade the neighborhood and add longevity to it. The proposed 10 dwelling units on the property would provide over 1,500 square feet per dwelling unit, as opposed to only about 500 square feet per unit in some apartment buildings in the area. The proposed 10 units would be somewhat more crowded than townhouses on the opposite (north) side of W. Lunt Avenue, but this would not be deleterious. Under R3 zoning, plaintiffs' property has a value of about $40,000; but, if 10 dwelling units were permitted to be built, the property would be worth about $64,000.

Alan E. Waldman, a real estate broker and appraiser whose qualifications were stipulated to by defendant, also testified for plaintiffs as to the nature of the area surrounding plaintiffs' property. The area surrounding plaintiffs' property was originally built up with stucco and frame single-family residences; but during the 1920s, many apartment buildings were erected in the area on corner lots and in L-shaped structures in the middle of blocks. The neighborhood is now a mixture of uses. To the west of plaintiffs' property on the same south side of Lunt Avenue are a few two-story frame or stucco houses, and then a couple of two-flats. The next intersecting street to the west is N. Wolcott Street (1900 West).

---

[1] Plaintiffs have filed no answering brief.

At the southeast corner of the intersection is a 36-unit three-story apartment building. Across Lunt Avenue from plaintiffs' property are seven townhouses which abut the North Western Railroad tracks. To their west on the north side of Lunt Avenue are stucco and frame two-story residences. On the northeast corner of Lunt and Wolcott is a three-story English-basement apartment building containing 39 dwelling units, and on the southwest corner of Lunt and Wolcott is another walk-up apartment building containing 18 apartments. The seven townhouses on the north side of the street across from plaintiffs' property comply with the R3 zoning requirements. The apartment buildings at the intersection of Lunt and Wolcott, which were built in the 1920s, are legal but nonconforming uses under the 1957 amendment to the Zoning Ordinance.

In Mr. Waldman's opinion, development of plaintiffs' property with townhouses is the highest and best use of the property. Townhouses have a stabilizing effect on an area, and these townhouses would have no different effect on the neighborhood than that produced by the conforming townhouses on the north side of the street. Mr. Waldman believes that proper zoning should provide some medium density point between the minimum 2,500 square feet of lot area for each dwelling unit in districts zoned R3 and the 900 square feet minimum requirement in R4 districts. Plaintiffs' property under the R3 zoning is worth about $36,000; if the proposed 10-unit development were permitted, it would be worth about $53,000 or $54,000.

Richard J. McKinnon, a city planner, whose qualifications were stipulated to by plaintiffs, testified for defendant as to the nature of the area surrounding plaintiffs' property. His testimony as to the type of buildings in the area is largely repetitive of the testimony of plaintiffs' witnesses. In Mr. McKinnon's opinion the present R3 zoning of plaintiffs' property is the correct zoning in that all uses on the south frontage of Lunt Avenue in the block in which plaintiffs' property is located are conforming except the apartment building at the intersection of Lunt and Wolcott; all uses on the north frontage of Lunt Avenue in plaintiffs' block are conforming except the apartment buildings at the intersection of Lunt and Wolcott; and this same pattern of conforming uses in the interior of the blocks obtains in the immediate area of plaintiffs' property. Mr. McKinnon believes that the only deleterious effect of permitting the proposed townhouses would be in establishing a precedent of violating the proper density restriction of the R3 zoning. He is of the opinion that the City Council was mistaken in the 1920s when it permitted construction of the now nonconforming apartment buildings, but that it was not mistaken in the 1950s when it established the present zoning classification of the area. Zoned R3, plaintiffs' property is worth about $30,000; if the

proposed 10-unit development were permitted, it would be worth about $50,000.

John McNamara, a real estate broker, appraiser, and consultant, whose qualifications were stipulated to by plaintiffs, also testified for defendant as to the area surrounding plaintiffs' property. In Mr. McNamara's opinion the highest and best use of plaintiffs' property would be under its present R3 classification. This conclusion is based upon the fact that the townhouses on the north side of Lunt Avenue in the same block, as well as all new construction in the area, conform to the R3 zoning requirements. The said conforming townhouses were constructed within the last 7 years. Zoned R3, plaintiffs' property is worth about $30,000; if the proposed 10-unit development were permitted, it would be worth about $50,000.

In addition, three residents in the block in which plaintiffs' property is located testified to their opposition to plaintiffs' proposed development. ■■■ In determining whether plaintiffs have presented sufficient evidence to warrant invalidating a zoning ordinance as applied to their property, the burden of proving the invalidity of the ordinance is on the plaintiffs, as the party attacking the ordinance. (*Exchange National Bank v. County of Cook* (1962), 25 Ill.2d 434, 185 N.E.2d 250.) Before a court will invalidate the application of a zoning ordinance to specific property, it must be established by clear and convincing evidence that the ordinance as applied is arbitrary and unreasonable and has no substantial relation to the public health, safety, or welfare. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill.2d 415, 312 N.E.2d 625.) Where it appears from all the facts that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. *Krom v. City of Elmhurst* (1956), 8 Ill.2d 104, 133 N.E.2d 1.

From the evidence adduced, plaintiffs could argue three factors regarding the nature of their property and of the surrounding area which might tend to support a more liberal minimum density restriction per dwelling unit than that permitted under the R3 classification. The first factor is the disparity in density in the surrounding area created by the more intense uses of the existing apartment buildings. These buildings, erected long before the enactment of the 1957 zoning ordinance, are nonconforming legal uses.

In *Cosmopolitan National Bank v. City of Chicago* (1961), 22 Ill.2d 367, 373, 176 N.E.2d 795, the Supreme Court of Illinois reversed a judgment of the circuit court which permitted the plaintiff to erect a two-story townhouse containing five dwelling units upon a lot containing 6,999 square feet; the supreme court said:

"The record shows that, although the west side of Jersey is zoned R 4 and is largely built up with multiple-dwelling buildings, which presumably could not be built on their respective lots if the R 3 lot-area restrictions were applicable, the east side of the street is zoned R 3 and is for the most part built up with single-family dwellings which comply with the R 3 lot-area restrictions. Thus, this is not a case of a glaring miszoning of a specific piece of property. On the contrary, the classification of plaintiffs' property is entirely consistent not only with the zoning classification of other property on the east side of Jersey Avenue, but also with the actual construction and use of most of the property there situated."

Neither in the instant case is plaintiffs' property glaringly miszoned. Most of the frontage on both sides of plaintiffs' block and in the surrounding area is in conformity with the R3 classification. Most significantly, since plaintiffs' plan is to build townhouses, the townhouses across the street from plaintiffs' property are in conformity with the R3 requirements. The existence of older, more crowded apartment buildings, as described by the witnesses, does not by itself make unreasonable zoning requirements providing for less crowded conditions as set forth by the City Council in 1957. Rather the existence of these buildings at the time of the present enactment may have been the very reason why a less liberal density restriction for future development was passed.

■■ The second factor which might tend to support a more liberal density restriction per dwelling unit than that permitted under the R3 classification is the alleged trend toward obsolescence of the many frame houses on plaintiffs' block and in the surrounding area. Mr. Mose testified that the building of townhouses would upgrade and add longevity to the neighborhood. Mr. Waldman testified that the proposed townhouses would have a stabilizing effect on the area. The trial judge found that the proposed townhouses consisting of 10 units "would be a step in the right direction toward the ultimate rehabilitation of Lunt Avenue in the vicinity of plaintiffs' property." Assuming all this to be true, plaintiffs have still failed to show how the restriction limiting plaintiffs' property to townhouses with 6 rather than 10 dwelling units is unreasonable. The burden on plaintiffs is not to show the reasonableness of plaintiffs' proposed violatory improvement but to show by clear and convincing evidence the unreasonableness of the existing zoning. The very existence of the conforming townhouses across the street tends to rebut an argument that nonconforming townhouses are needed to upgrade the community and that plaintiffs' plan is the only feasible plan for construction of townhouses. Townhouses have been built, and may still be built, under the R3 classification.

■■ The final factor that might tend to support a more liberal density restriction per dwelling unit than that provided under the R3 classification is the fact that plaintiffs' property is worth considerably more if 10 units may be built upon it than it is under the existing restrictions limiting the property to 6 units. It is normally the case that, where property is put to a more intense use, it will increase in value; but this, by itself, does not mean that the less intense use is necessarily unreasonable and that the ordinance must be invalidated. *Elmer Clavey, Inc. v. City of Highland Park* (1966), 75 Ill.App.2d 464, 220 N.E.2d 93.

Having examined these factors, we conclude that plaintiffs have failed to establish by clear and convincing evidence that the R3 classification as applied to plaintiffs' property is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. We conclude that the trial court erred in finding the defendant's ordinance void as applied to plaintiffs' property.

Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

DOWNING, P. J., and STAMOS, J., concur.