W.J. LITTLEJOHN *et al.*, Plaintiffs-Appellees, v. THE CITY OF NORTH CHICAGO, Defendant-Appellant.

Second District    No. 2—93—0010

Opinion filed March 22, 1994.

Suzanne A. Lindsay, of Rosing, Applehans, Smith, Ericksen & Zeit, Ltd., of Waukegan (Charles W. Smith, of counsel), for appellant.

H. Reed Harris, of Chicago, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Reverend W.J. Littlejohn, the Church of the Word of God, and Tracy Lamb, filed a complaint for declaratory judgment and other relief in the circuit court of Lake County against defendant, the City of North Chicago. Plaintiffs' complaint sought, in part, a declaration that a particular zoning ordinance, which prevented plaintiffs from renovating and using the subject property as a religious institution, was unconstitutional and void on its face. Following a bench trial, the trial court held that plaintiffs' due process and free exercise clause claims were without merit. The court further concluded, however, that the zoning ordinance was invalid because it was confiscatory and void as it related to plaintiffs' property. Defendant timely appeals.

Defendant raises the following issues: (1) whether the trial court's

determination of invalidity was against the manifest weight of the evidence; (2) whether Reverend Littlejohn and the Church of the Word of God had standing to challenge the validity of the zoning ordinance; and (3) whether plaintiffs failed to comply with the expert witness disclosure requirements of Supreme Court Rule 220(b) (see 134 Ill. 2d R. 220(b)) by calling defendant's experts at trial as adverse witnesses without prior disclosure to defendant.

As in most zoning cases, it is necessary to describe briefly the subject property and the surrounding area. The subject property is located on Sheridan Road in North Chicago, Illinois. Sheridan Road runs generally in a north-south direction. Crossing Sheridan Road in an east-west direction at fairly regular intervals are 14th, 15th, 16th, 17th and 18th Streets, with 14th Street being the northernmost street. Midway between 16th Street and 17th Street is Foss Park Avenue, which runs eastward from Sheridan Road with its western terminus at Sheridan Road. The subject property is located at the southeast corner of Sheridan Road and Foss Park Avenue.

Originally operated as a movie theater over 20 years ago, the subject property now sits vacant. Tracy Lamb, the owner of the building, testified that the building was in excellent condition, that the interior was sparse and clean, and it was tuck-pointed in 1987 and reroofed in 1989. Additionally, the building had been eradicated of asbestos at a total cost of $40,000. According to Lamb, the Church of the Word of God contributed $25,000 toward the asbestos removal.

The surrounding area can best be described as a mix of business, industrial, and residential uses interspersed with pockets of urban blight. Between the property and 17th Street to the south, and along the east side of Sheridan Road, are a vacant lot, a closed business, a narrower vacant lot, a tent rental company, and a sign business. Continuing south toward 18th Street are a parking lot, a four-story apartment building, and in smaller storefront buildings, a sundry store, a hair salon, a beauty salon, a Chinese restaurant, a clothing store, a bookstore, and, housed in a larger building, a bank.

North of the subject property, and commencing in order, are a small radiator repair shop, a residential building, a small single-family (in appearance) house, and a double-sized storefront building with residential accommodations above. Located immediately behind the first residential building and house is a burned-out residential building.

Continuing northward along the east side of Sheridan toward 15th Street is a bowling alley, and continuing past 14th Street is a large parking lot which fronts on Sheridan Road. Immediately east of the large parking lot and bowling alley is a large industrial complex, which houses Abbott Laboratories.

From an aerial photograph admitted in evidence, it appears that eastward along both sides of Foss Park Avenue are single-family residences. Additionally, located behind the businesses fronting Sheridan Road on the east side and between 17th Street and 16th Street is a street-width, or wider, vacant area, which appears to serve as parking for those businesses.

Directly across from the subject property, on the west side of Sheridan Road, is a vacant lot. Proceeding northward, and in order, are a small residential building, a parking lot, a three-story apartment building, and a fast-food restaurant. North of 16th Street are a parking lot, a diner with parking, a postal facility, and a small office building.

South of the vacant lot which sits directly across from the subject property, and proceeding south along the west side of Sheridan Road, are a small residential facility, a vacant lot, another residential building, and a parking lot and larger commercial or business type building. Between 17th Street and 18th Street are numerous small businesses located generally in storefront buildings. There are six retail shops, four restaurants, three taverns, and five combination business/residential buildings. Also located along this stretch are four vacant lots or businesses. Running the entire length from 15th Street south to 18th Street, the photograph appears to depict residential housing located behind the lots and buildings which front Sheridan Road from the west side.

To summarize, the entire area between 14th Street and 18th Street along Sheridan Road contains, as nearly as we are able to ascertain, 13 retail or service outlets, 7 restaurants, 4 parking lots, 3 taverns, a bank, 10 empty lots or vacant buildings, 5 mixed residential/business buildings, 2 office buildings, a United States postal facility, 3 small residential buildings, 2 apartment buildings, and a large industrial complex.

It was undisputed that at the inception of this action the subject property and the entire area along the Sheridan Road corridor was zoned B-2 general business district. Under the North Chicago ordinance, a copy of which was admitted in evidence, B-2 zoning permits a variety of retail shops, specialty shops, services, financial institutions, and offices. Approximately 130 specific uses are enumerated, including, as examples, commercial and industrial services, commercial schools, financial service institutions, food service, business offices, certain public facilities, certain recreational facilities, upper story apartment buildings with one to four units, apartment hotels, and a multitude of retail sales outlets. Religious institutions are not designated as a permitted use in B-2 zoning.

Furthermore, religious institutions require residential zoning and the issuance of a special-use permit.

On April 11, 1989, the Church of the Word of God (Church) executed a two-year lease, commencing January 1, 1990, with the Michigan Avenue National Bank, as trustee, for the subject property. Tracy Lamb, the trust's sole beneficiary, signed the lease as agent for the trust. Reverend Littlejohn and two of the Church deacons signed the lease on behalf of the Church. The monthly rent was $1,200, and it further included an option to extend "for an additional 8 years at $2500." Lamb testified, however, that following the first year of payments at $1,200 per month and remodeling, he would donate the subject property to the Church. When asked what he thought the property's value was, Lamb testified that as a church he thought the property had a value of $1 million, but if it were to remain vacant the building would be of no value.

Reverend Littlejohn testified that after he signed the lease for the subject property and expended $25,000 for asbestos removal, he learned that the current zoning would not permit use of the property as a religious institution. Following a petition for a map amendment, the community development and planning commission recommended to the zoning board of appeals that the petition be denied, citing four reasons: (1) that the area was in economic decline; (2) that the site was in the path of the proposed lake front highway, which meant that the use would be ultimately eliminated; (3) that there was inadequate parking; and (4) that a church would be an incompatible use.

The zoning board of appeals denied plaintiffs' map amendment petition to rezone the property from B-2 to R-1 residential with a special-use permit for a church. Following a subsequent presentation of the petition to the full city council, that body also denied the petition. Plaintiffs then filed an action for declaratory and other relief, seeking to challenge the validity of the zoning ordinance as it applied to the subject property.

At trial, plaintiffs called seven witnesses. The first four witnesses, Jeff Meyer, the community development and planning director for the City of North Chicago; Nicholas Trkla, an urban planning and development specialist; Steven Sabourin, an assistant planner for the City of North Chicago; and Robert H. Stone, a City of North Chicago building commissioner, were called as adverse witnesses. Plaintiff also called Tracy Lamb, the owner of the subject property; Reverend Littlejohn; and Gordon Meling. The trial court ultimately struck Meling's testimony in its entirety.

From the collective testimonies of plaintiffs' adverse and direct witnesses, the following additional relevant facts were adduced. The

subject property had no on-site parking, but on-street parking was available nearby.

The existing residential properties in the area were legal nonconforming uses which predated the current zoning ordinance. Additionally, a three- or four-story senior center had been constructed about $2^1/2$ to 3 blocks south of the subject property. The record does not, however, reveal the date of construction, and there was testimony that the senior center was situated within B-2 zoning.

Jeff Meyer acknowledged, although he was not sure, that additional businesses in the area had been boarded up within the past two years. When asked whether the area was in economic decline, defendant objected on the ground that plaintiff was attempting to elicit expert testimony in derogation of the disclosure requirements of Supreme Court Rule 220(b) (see 134 Ill. 2d R. 220(b)). The trial court overruled defendant's objection.

On direct examination, Reverend Littlejohn testified that he was the founder of the Church of the Word of God and that the church, at that time, had approximately 45 to 50 members. Average attendance on a Sunday ranged from 25 to 30 members.

In defendant's case in chief, Jeff Meyer opined that the rezoning of the subject property would cause further economic decline in the surrounding area because "spot" zoning in an area marked for revitalization would be "almost disastrous." He further acknowledged that a decrease in value would occur because the number of permitted uses for the property would decline from 50 or 60 to 1. In Meyer's opinion the subject property would achieve its highest and best use under the current zoning and that the proposed rezoning was inconsistent with the comprehensive plan for the area or with the future use for the area.

On cross-examination, Meyer stated that to his knowledge no new business construction had occurred in the area since 1971. He opined, however, that the subject property should be demolished and that the property had greater value under the current zoning.

Nicholas Trkla, an urban planning and development expert, testified about the impact rezoning would have on the City of North Chicago's comprehensive plan and zoning ordinance. Trkla explained that any spot down-zoning that would in any way hold a parcel of land out of commercial use or potential commercial reorganization would be a step backwards and inimical to the interests of defendant in restructuring its central business district.

Trkla opined that if the subject property were down-zoned to R-1 with a special-use permit, it would not aid other businesses and perhaps represent more of a barrier to business development. It was

his belief that the city needed to maintain maximum flexibility to address the marginal conditions which existed and that it needed to remove as many constraints as possible. Additionally, if any context for compatible commercial businesses were to be recreated, it would not begin with taking a parcel "out of the middle and down-zoning it" and then allowing it to become the pivot point around which all other things must be organized. He further opined that Lamb would suffer no economic loss and that the property would be more valuable zoned B-2.

On cross-examination, Trkla stated that he would probably not have supported construction of the senior center in its present location. When asked whether there were a good number of abandoned and vacant buildings along Sheridan Road within the three blocks of the site, Trkla responded yes. He explained further, however, that that was not a function of the comprehensive plan or zoning; instead, it was the result of obsolescence and that the area was not strengthened if you detract from what is already a marginal environment. He stated further that constraints to revitalization should be removed and down-zoning did not serve that purpose.

In a written memorandum opinion, the trial court held (1) that plaintiffs had standing to challenge the zoning ordinance; and (2) that plaintiffs' challenge on due process and free exercise grounds was without merit. The trial court, however, determined that the ordinance should be held invalid as it applied to plaintiffs' property because it was confiscatory and void. The trial court ordered plaintiffs' property rezoned R-1, or any other classification under which church services are allowed as a special use, and that a special-use permit be issued to Littlejohn. Defendant appeals.

Defendant contends first that the trial court's determination of invalidity was against the manifest weight of the evidence. It is well established that zoning ordinances carry a presumption of validity, and the party challenging the presumption carries the burden of establishing by clear and convincing evidence that, with respect to the particular property in question, the ordinance is arbitrary, capricious, and unreasonable and bears no reasonable relationship to the public health, safety, or general welfare. (*Tim Thompson, Inc. v. Village of Hinsdale* (1993), 247 Ill. App. 3d 863, 872; accord *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) A reviewing court, however, will not disturb a trial court's determination of the validity of a zoning ordinance unless that determination is against the manifest weight of the evidence. *Illinois National Bank & Trust Co. v. County of Winnebago* (1960), 19 Ill. 2d 487, 495.

Frequently, the validity of a zoning ordinance is analyzed in ac-

cordance with the various factors articulated in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, and *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370. Those factors are (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished; (3) the extent to which the destruction of property value of plaintiff promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as opposed to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property has been vacant as zoned considered in the context of land development in the area; (7) the care with which the community has undertaken to plan its land-use development; and (8) evidence, or lack of evidence, of community need for the use proposed by the plaintiff. (*Thompson*, 247 Ill. App. 3d at 872; see also *La Salle*, 12 Ill. 2d at 46-47; *Sinclair*, 19 Ill. 2d at 378.) The list of factors is not exclusive; no one factor controls, and validity is to be determined on the facts and circumstances of each case. *Rodriguez v. Henderson* (1991), 217 Ill. App. 3d 1024, 1029.

Although the trial court did not specifically articulate which of the enumerated factors it found controlling, its decision appears to rest on considerations related to the first, fourth, fifth, and sixth factors. The trial court's findings and determinations will be recited in consort with our analysis of each factor.

Defendant maintains that the trial court's ruling was against the manifest weight of the evidence because (1) plaintiff presented insufficient evidence on the various *La Salle/Sinclair* factors necessary to upset the presumptive validity of the B-2 zoning classification; (2) the Church's payment of $25,000 toward asbestos removal was nothing more than a self-inflicted hardship insufficient to warrant a declaration of invalidity; and (3) that, at best, plaintiffs' case makes the validity of the B-2 zoning classification as applied to the subject property only fairly debatable.

Following a careful review of the record and testimony presented at trial, we agree with defendant that the trial court's determination that the B-2 zoning classification was invalid as applied to the subject property was against the manifest weight of the evidence. Without reweighing the evidence or supplanting the trier of fact's judgment as to the credibility of the witnesses, we determine that an opposite conclusion from that reached by the trial court is clearly evident. (See *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 180.) Plaintiffs have failed to present clear and convincing evidence that the B-2 zoning, as it applied to the subject property, was an arbitrary and unreasonable exercise of legislative power bearing

no substantial relation to public health, safety, morals, or welfare. Although plaintiffs presented evidence that the subject property was potentially suitable for its desired purposes, the "proof must establish not merely that the property *could* reasonably be classified as plaintiffs' wish, nor indeed that the court *would* classify it otherwise; rather, plaintiffs must establish that the legislative decision as to the property is 'clearly unreasonable.' " (Emphasis in original.) *Zenith Radio Corp. v. Village of Mount Prospect* (1973), 15 Ill. App. 3d 587, 592; accord *Devon Bank v. City of Chicago* (1975), 25 Ill. App. 3d 507, 511.

Related to the first factor, which considers the existing uses and zoning of nearby property (*La Salle*, 12 Ill. 2d at 46), the trial court found it significant that the current zoning scheme had been compromised because the "property to the west has been zoned for residential use and there was no reason to conclude that extending residential zoning to plaintiff's property [would] have a severe effect." Additionally, the court stated that although the plaintiffs presented no experts of their own, the other evidence "convincingly show[ed]" that the area surrounding the subject property would not be adversely affected to any appreciable degree by rezoning. Although no single factor is controlling, courts have treated the existing uses and zoning of nearby property as being of paramount importance. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309; *La Salle*, 12 Ill. 2d at 47; *Thompson*, 247 Ill. App. 3d at 873.) We disagree with the trial court's assertion for two reasons.

First, the trial court's finding that the property to the west was zoned residential is not supported by the record. The only evidence presented on the existing uses and zoning of nearby property was that the entire corridor along Sheridan Road was zoned B-2, that there was a conglomeration of permitted uses (comparing the testimony and photographs to the zoning ordinance), and that existing residential uses were legal nonconforming uses. There was some testimony that a senior center was constructed two to three blocks south of the subject property; however, plaintiffs established neither when the center was constructed nor whether it was a nonpermitted use.

Second, we find the trial court's reliance on the presence of legal nonconforming uses as a basis upon which to upset the presumptive validity of the zoning ordinance misplaced. A legal nonconforming use is a nonpermitted use under currently applicable zoning ordinances which predates the applicable zoning ordinance and is legalized on that basis. Illinois courts, however, have not been constrained to find nonconforming uses determinative in deciding the

validity of the challenged ordinance (see *Zenith Radio*, 15 Ill. App. 3d at 593) because, at least in part, "the spirit and intent of zoning is to restrict and eventually eliminate nonconforming uses" (*Lindgren v. City of Chicago* (1970), 124 Ill. App. 2d 289, 298, citing 2A. Rathkopf, Law of Zoning & Planning at 62—1 (3d ed. 1966)). As explained in *Lindgren*:

> "Nonconforming uses and structures are, by definition, alien to the homogeneity of a district created under a zoning ordinance enacted in accordance with a comprehensive plan. They were originally tolerated and protected to the extent of their scope and existence at the time of passage of the zoning ordinance because it was considered necessary so to preserve them in order to render the ordinance constitutional ***.
>
> Because nonconforming uses and structures, so long as they exist, prevent the full realization of the zoning plan, the spirit of zoning is, and has been, to restrict, rather than increase, such nonconformities and to eliminate such uses as speedily as possible." (*Lindgren*, 124 Ill. App. 2d at 298-99.)

At trial, plaintiffs presented no evidence to refute or otherwise contradict defense testimony that the existing residential uses were legal nonconforming uses. The only evidence presented by plaintiffs was that there were residential uses in the area surrounding the subject property. Additionally, Jeff Meyer testified, in defendant's case in chief, that the proposed rezoning was inconsistent with the comprehensive plan for the area or with the future use for the area.

Additionally, the trial court's finding the defense testimony regarding nonconformity unpersuasive in light of already existing nonconforming residential use, in our opinion, ignores the principle underlying the allowance of a legal nonconforming use, which is ultimately to eliminate the use. Defendant's experts directly addressed this concern. Meyer opined that the rezoning of the subject property would contribute further to the economic decline in the area because the permitted number of uses for the property would drop to a single use. Trkla testified that a "spot down-zoning" would be inimical to the interests of defendant in restructuring its business district and that it should maintain maximum flexibility by removing as many constraints as possible.

Furthermore, invalidating the zoning ordinance as to the subject property would only contribute further to the state of urban decay and economic decline present in the area surrounding the property. In addition to running counter to the true purpose underlying the allowance of legal nonconforming uses, the allowance of residential zoning would destroy the homogenous nature of the present zoning

along Sheridan Road which in turn and with equal reason could be relied upon in the future as justification for additional zoning changes (*cf. Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 385), thus leading to a further breakdown of the existing scheme. Such an action, in our opinion, would only further distress an already struggling business district and would contribute to, and not help alleviate, the economic decline in the area.

Finally, although the evidence presented by plaintiffs did not establish it as such, even if the senior center that was constructed two to three blocks south of the subject property were a nonpermitted use, that fact alone stands in equipoise in a challenge to the presumptive validity of the existing zoning classification. ·(*County of Du Page v. Henderson* (1949), 402 Ill. 179, 188.) Our supreme court has previously stated:

> "The fact that nonpermissive uses are carried on by others contrary to the ordinance neither fortifies nor weakens the case of appellants, but each alleged violation of the ordinance is a complete case within itself and must stand or fall upon the facts and circumstances of that case alone. *** The presumption of the validity of that classification must be overcome by proof made by defendants which is clear and convincing." (*Henderson*, 402 Ill. at 188.)

Accordingly, as related to the first *La Salle/Sinclair* factor, we conclude that the record does not support plaintiffs' challenge to the presumptive validity of the zoning ordinance as it applies to the subject property.

Related to the fourth factor, which examines the relative gain to the public as opposed to the hardship imposed upon the individual property owner (*La Salle*, 12 Ill. 2d at 47), the trial court reasoned that the subject property stood little chance of being put to use, that the public was receiving little benefit, and that plaintiffs were unreasonably suffering hardship. A zoning classification is unconstitutional if it causes undue hardship on the plaintiff and does not promote the health, safety, morals, or the general welfare of the village in any manner. (*Oak Park Trust & Savings Bank v. Village of Palos Park* (1982), 106 Ill. App. 3d 394, 403-05.) The only evidence presented by plaintiffs relating to hardship was that the Church had expended $25,000 toward asbestos removal before learning that the existing zoning would not support their proposed use. Although the trial court was apparently influenced, at least in part, by their expenditure, we fail to see how plaintiffs could be unreasonably suffering hardship where such hardship was occasioned by their own actions. In the absence of any convincing evidence of countervailing

equitable considerations, a party challenging the validity of a zoning ordinance cannot be heard to argue that it is suffering an unreasonable hardship where that hardship has been occasioned by the party's expenditure of monies in disregard of an existing ordinance. Because plaintiffs presented no other evidence related to their suffering unreasonable hardship, we find any conclusion of invalidity premised on the fourth factor unsupported. Additionally, although the property, like others in the area, was not currently in use, defendant's experts established that there was some benefit to the public in maintaining a homogenous zoning classification for its general business district.

Related to the fifth factor, which considers the suitability of the subject property for the zoned purposes (*La Salle*, 12 Ill. 2d at 47), the trial court felt that rezoning was appropriate because at least the building would be put to some use and that it was unpersuaded by defendant's contention relating to inadequate parking. Although plaintiffs presented evidence sufficient to support the conclusion that their proposed use was reasonable, thus necessitating the court's consideration of the validity of the ordinance (see *Amalgamated Trust*, 82 Ill. App. 3d at 378-79), plaintiffs presented no evidence to support the conclusion that the property would not be suitable for business use under the existing zoning classification (see *La Salle*, 12 Ill. 2d at 47; *Oak Park Trust & Savings*, 106 Ill. App. 3d at 405). Although the law does not require that the subject property be totally unsuitable for the purpose classified, plaintiffs must present sufficient evidence that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. (*La Salle*, 12 Ill. 2d at 48.) Other than Lamb's opinion, which was unsupported by any factual basis in the record, that the property had a value of $1 million as a church and no value otherwise, plaintiffs presented no evidence that a substantial decrease in the value of the subject property resulted from the existing B-2 classification. Accordingly, any determination of invalidity premised in whole or in part on the fifth factor is unsupported by the record.

Related to the sixth factor, which considers the length of time the subject property has been vacant as zoned considered in the context of land development in the vicinity of the subject property (*La Salle*, 12 Ill. 2d at 47), the trial court noted that the area was in severe economic decline, that the building had not been used for 20 years and was adjacent to vacant lots on the south and east; and there was little evidence of construction in the area. Given the availability of vacant lots, the court found it unlikely that a business would be willing to purchase a lot with a structure in need of serious

rehabilitation. It was undisputed that the building on the subject property has sat vacant for 20 years and during that time Lamb's efforts to sell have proven fruitless. Plaintiffs did not present evidence, however, tending to establish that the property remained unsalable, vacant, or undeveloped because of the existing zoning classification. (See *Amalgamated Trust*, 82 Ill. App. 3d at 384.) At best, the evidence tended to establish that the property, like others in the area, sat vacant because of severe economic conditions in the surrounding area. In the absence of any proof that the property remained vacant because of the existing zoning, a court would "have no more reason to hold the vacancy of the property was occasioned by improper zoning than [it] would to hold that the vacancy occurred because no attempts were made to use or develop the property, or because other difficulties totally unrelated to zoning had been encountered." (*Amalgamated Trust*, 82 Ill. App. 3d at 384.) Accordingly, any determination of invalidity premised on the sixth factor is unsupported by the record.

Reviewing the record before us in the context of the remaining factors, we cannot conclude that the plaintiffs presented a sufficient evidentiary basis to overcome the presumptive validity of the B-2 zoning classification as it applied to the subject property. Even if we were to stretch the facts as presented to include every conceivably reasonable inference favorable to plaintiffs, the most that could be said on this record is that reasonable minds might differ as to the constitutionality of the ordinance, which is an insufficient basis on which to hold the existing zoning classification invalid as applied to the subject property. (See *Urann v. Village of Hinsdale* (1964), 30 Ill. 2d 170, 175; see also *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 180.) Although the trial court's decision appears to have been motivated, in part, by a desire to put an otherwise unused and unproductive property to some use, "[i]t is not enough for one seeking to invalidate an ordinance to show that the property could reasonably be zoned otherwise than it is." See *Chicago Title & Trust Co. v. City of Chicago* (1970), 130 Ill. App. 2d 45, 50.

Under the circumstances of the present case, plaintiffs have not met their substantial burden of showing by clear and convincing evidence that the B-2 zoning classification, as applied to the subject property, was arbitrary, unreasonable, and substantially unrelated to public safety, health, welfare, or morals. (See *La Salle*, 12 Ill. 2d at 46.) Accordingly, we conclude that the trial court's determination of invalidity was against the manifest weight of the evidence.

In view of our conclusion, it is unnecessary to reach defendant's remaining contentions. Specifically, we decline to analyze and dispose of defendant's contention related to the issue of Reverend Littlejohn

and the Church's standing as plaintiffs. It is clear from the record that defendant did not dispute Tracy Lamb's standing as plaintiff in either the trial court or this court. Accordingly, we deem it immaterial to the resolution of this case whether the court had one or more plaintiffs before it. See *First National Bank v. Village of Vernon Hills* (1977), 55 Ill. App. 3d 985, 993.

Finally, although unnecessary to the resolution of the present case, we question the propriety of the relief fashioned in the trial court's order. In its memorandum order, the trial court ordered, in part:

"That plaintiff's property be rezoned 'R-1,' or any other classification under which church services are allowed as a special use."

Because zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428), we question whether the trial court exceeded its authority when it entered an explicit order imposing its own zoning classification on the subject property (see *Seiler v. City of Granite City* (1993), 255 Ill. App. 3d 210, 212, 625 N.E.2d 1170, 1172 ("[r]egardless of the language employed [in its order], a trial court cannot rezone property")).

For the foregoing reasons, the order of the circuit court of Lake County is reversed.

Reversed.

COLWELL and PECCARELLI, JJ., concur.