The Exchange National Bank of Chicago, as Trustee Under Trust Dated February 23, 1960, Known as Trust No. 10835, Plaintiff-Appellee, v. Village of Skokie, Illinois, a Municipal Corporation, Defendant-Appellant.

Gen. No. 51,725.

First District, Fourth Division.

July 31, 1967.

Harvey Schwartz, of Skokie, for appellant.

Philip R. Toomin, of Chicago, for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Defendant appeals from a judgment declaring invalid, and restraining enforcement of, the Village Zoning Ordi-

nance insofar as it classified plaintiff's property as B–1 (Neighborhood Shopping) and B–2 (Commercial), and thereby prevented its use for a combined automatic car wash, gasoline service station, accessory store and automobile diagnostic center.

The subject property (approximately 75,000 square feet in total area) fronts 180 feet on the west side of Skokie Boulevard, a six-lane primary arterial thoroughfare, just south of Emerson Street. Proceeding northward from the subject site on the west side of Skokie Boulevard to Simpson Street are: the Old Orchard Theatre and parking area; a bowling alley complex known as Orchard Twin Bowl, including an indoor tennis court, cocktail lounge, restaurant and parking area; Estee Sleep Shop (a retail store); an area of vacant land; three more retail businesses (a refreshment stand, a fish store, and the Olson Rug Company); and, at the southwest corner of Simpson Street and Skokie Boulevard, the Vogue Tire and Accessory store. North of Simpson Street on the west side of Skokie Boulevard and extending to Old Orchard Road, is the large Old Orchard Shopping Center.

South of the subject site, along the west side of Skokie Boulevard, are the Homer Bros. Furniture store, Dominic's supermarket, Polk Bros. discount store, and, at the corner of Gross Point Road and Skokie Boulevard, Mr. Ricky's Restaurant.

Northward, along the east side of Skokie Boulevard from the intersection with Gross Point Road, are a Shell gasoline service station (which also manually washes and services cars and does minor repair work), a B. F. Goodrich Auto Accessories store (which sells tires and parts, and has a series of service bays where mufflers, brakes and other auto parts are installed), a Howard Johnson's Motor Lodge and Restaurant (directly opposite the subject site), a Turnstyle Discount Center (which includes a garden center and a Firestone automotive center), a Kiddieland amusement center and golf driving

14

range, and on the southeast corner of Simpson Street and Skokie Boulevard, Henry's Restaurant. North of Simpson, on the east side of Skokie Boulevard and extending to Old Orchard Road, is the Memorial Park Cemetery.

To a depth of 125 feet the frontage property along the west side of Skokie Boulevard running about two-thirds of the way from Gross Point Road to Simpson Street, is zoned B–1 and the rest of the area in question is zoned B–2. The dividing line passes through the buildings of Homer Bros. Furniture store and Estee Sleep Shop, and across the subject property and that of the Old Orchard Theatre and the Orchard Twin Bowl, the actual structures of which are in the B–2 zone. Proceeding north of the Sleep Shop there is a small area fronting on Skokie Boulevard which is part of, and leads west to, a much larger area, the balance of which fronts on Simpson Street opposite the south side of the Old Orchard Shopping Center, and is zoned for multiple-family apartment buildings. Continuing north, the B–1, B–2 pattern is resumed with the dividing line crossing the fish store, refreshment stand, and through the Olson Rug Company building. The last plot on the west side of Skokie Boulevard, immediately south of Simpson Street, was changed by defendant to B–3 (a few weeks after denial of plaintiff's application) to accommodate the Vogue Tire and Accessory store under construction at the time of this appeal.

The area along the east side of Skokie Boulevard from Gross Point Road to Foster Avenue, is zoned B–3. This includes the properties directly across the street from the subject premises. From Foster Avenue north to Simpson Street (on the east side of Skokie), the Kiddieland and golf driving range is zoned R–1, but represents a nonconforming use, and the Henry's Drive-in Restaurant at the southeast corner of Skokie Boulevard is zoned B–1.

In 1965 plaintiff applied to defendant to rezone the property in question to B–4, or to B–3 with special use permission to install the car wash operation as described

15

above. The application was referred to the Village Plan Commission which held a hearing and thereafter filed its report with the Village Board, unanimously recommending a change to the B–3 classification with a special use permission to install the requested improvement. In its report the Commission found that the proposed use would be consistent and compatible with the surrounding zoning and existing uses. Despite this recommendation, however, the Village Board, by a vote of 4 to 2, denied plaintiff's application, thereby exhausting plaintiff's administrative remedies, and this declaratory judgment action was filed soon thereafter.

Defendant contends that plaintiff has not met the burden of overcoming the presumption of validity which attaches to legislative determinations; that the proposed use would have an adverse economic impact upon competing businesses in the area, and that the trial court erred in striking testimony on this issue; that the present zoning classification imposes no burdens on plaintiff or its property that are not common to hundreds of other property owners and properties; and that the proposed use will aggravate already overburdened traffic facilities.

In its judgment order the trial court referred to the uses excluded under B–1 and B–2 (e. g., service stations, automobile accessories stores and automobile laundries) and then found:

. . . . . .

"5. Uses similar to said excluded uses are found along Skokie Boulevard in the area between Simpson Street and Gross Point Road, and other similar uses are permitted in B–2 zones. In addition, the principal uses found in said area are permitted uses within the B–4 Regional Shopping District in which said excluded uses are permitted.

16

"6. Said excluded uses are compatible both with the uses presently found in said area, and with the uses permitted therein.

. . . . . .

"8. The action of defendant in refusing to rezone the said premises into the B–3 Commercial Zone with special use permission to install the said [proposed] uses, or to rezone said premises into the B–4 Regional Shopping District in which the requested uses are permitted, was discriminatory, arbitrary and capricious.

"9. The classification of uses contained in the B–1 Neighborhood Shopping, and B–2 Commercial Districts are discriminatory, capricious and arbitrary, in denying plaintiff the right to use its premises for an automobile care and service center, including a car wash, while permitting other similar uses in said districts, and other uses with which the proposed uses are compatible.

"10. The Skokie Zoning Ordinance . . . is invalid, as same relates to plaintiff's property, in permitting certain uses to be installed in the immediate area of said property with which plaintiff's proposed use is compatible, while excluding plaintiff's similar [and] compatible use from said property."

The court also found that the Zoning Ordinance as applied to plaintiff's property bore no reasonable relation to the "public health, safety, morals, comfort or general welfare" of either the neighborhood or the village, and that plaintiff was entitled to use the property for the purposes proposed.

The essential question presented on this appeal is whether the trial court utilized the proper criteria and correctly applied them to the facts of the case. These

17

criteria are familiar and need not be listed. People ex rel. Chicago Title & Trust Co. v. Village of Elmwood Park, 27 Ill2d 177, 183–184, 188 NE2d 684. It is our conclusion that they were properly applied to the facts in the instant case and that the judgment of the Circuit Court should be affirmed.

As noted, the decree finds that the uses which are excluded from the "B–1, B–2" categories are so similar to and compatible with the permitted uses as to constitute an arbitrary discrimination. Plaintiff correctly argues the theory of compatibility as recently discussed in Hartung v. Village of Skokie, 22 Ill2d 485, 494–495, 177 NE2d 328; Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529; and People ex rel. Chicago Title & Trust Co., supra. In Ward, application was made for a special use to permit construction of a motel on Skokie Boulevard one and one-half miles south of the property contested in the instant suit. The court noted that none of the adjacent uses were of a hotel or motel type, but said that they were nevertheless of similar, compatible, commercial nature, and in upholding the proposed use, refused, as do we, "to sustain a restriction so completely out of keeping with the character of adjacent uses and of those to which the property and its location are suitable." (26 Ill2d at pp 418–419.)

In addition to the fact of compatibility between the proposed and adjacent uses, we find an arbitrary and unreasonable discrimination in the Village's denial of plaintiff's application in the light of its having granted a "B–3" classification to the Vogue Tire and Accessory Store located very close to the subject property and on the same side of the street. The Vogue operation, as well as the accessory and service station uses on the east side of Skokie Boulevard, employ service bays for repair and installation work and we think a distinction between those uses and that proposed by plaintiff is, at best, insubstan-

tial. Father Basil's Lodge v. City of Chicago, 393 Ill 246, 65 NE2d 805; Frost v. Village of Glen Ellyn, 30 Ill2d 241, 195 NE2d 616; Marquette Nat. Bank v. Village of Oak Lawn, 57 Ill App2d 31, 206 NE2d 531.

█ To defendant's argument that plaintiff has shown no burden which does not likewise fall upon adjacent and numerous other property owners, and that plaintiff has not shown an unreasonable or discriminatory economic burden, we apply the principle of People ex rel. R. Larsen & Co., Inc. v. City of Chicago, 24 Ill2d 15, 19, 179 NE2d 676. It is not necessary to a showing that a zoning ordinance is arbitrary, for the evidence to establish that the subject property is totally unsuitable for the permitted uses, but rather, the evidence need only show, as it does here, that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. See also LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, 48, 145 NE2d 65; Weitling v. County of Du Page, 26 Ill2d 196, 199, 186 NE2d 291; and Atkins v. County of Cook, 18 Ill2d 287, 293, 297, 163 NE2d 826.

██ Defendant also argues that it properly denied plaintiff's application because the proposed use would overburden the already heavy traffic pattern in the area. We shall consider this point even though we are not required to do so, since it was not raised in the pleadings. A defense witness testified that any use of the subject property would have an impact on traffic, but that an auto laundry would have a more adverse effect than a use permitted within a "B–1" or "B–2" classification. He had made no special study, however, and did not testify to any comparison between the relative impact of these different uses.

The record discloses that the only existing car wash in the Village of Skokie is located on the same street about a mile and a half to the south. That facility, however, has

little or no space for the parking or storage of cars off the street while they are waiting to be washed, whereas plaintiff's proposed operation could accommodate 200 cars off the street. This would be made possible by utilizing the adjacent Old Orchard Theatre parking lot during the daytime hours when the auto laundry would be operating and the theatre needs would be minimal. An additional factor was considered in Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419, 425–426, 129 NE2d 1. There the court found insignificant a minimal increase in traffic produced by a requested use where a large volume of traffic already existed and the zoning for the purpose of reducing traffic bore no reasonable relation to the public safety. The traffic on Skokie Boulevard was shown to be 16,000 cars per day, whereas plaintiff's proposed operation would involve 200 to 300 to possibly 500 cars per day. It should be noted, however, that there is no evidence that the auto laundry would introduce into the area any substantial volume of traffic not presently there as through traffic or as a result of existing patronage of the other businesses in the area. We find defendant's argument on the question of traffic congestion to be without merit.

■ We have also considered defendant's argument that the trial court erroneously caused to be stricken testimony that an auto laundry would have an adverse economic effect on other businesses in the area ("At least four solid businessmen in that area will go under"), and would cause severe competitive disadvantages to the typical gasoline stations which do not afford such a service. Defendant seeks to justify denial of the application here on the principle that municipal police power may not properly be used discriminatorily to grant economic and competitive advantages to one party over others. We do not agree that the finding in this case produces that result. In the authorities to which we have been cited

concern was limited to violation of planned community development or lack of showing of community need, and they do not establish any municipal responsibility to utilize zoning power in such a way as to protect existing businesses. We have not found—nor did we expect to find—authority for this position, and we consider it wholly without merit. If there is no need for the proposed use, it is difficult to imagine any adverse competitive impact, under the Village's theory, since it also argues that the other uses in the area are neither similar to, nor compatible with the proposed use. If an automated car wash competes more effectively than a hand wash, then the Village is seen to be arguing for the power to legislate economic protection for existing businesses against the normal competitive factors which are basic to our economic system. The Municipal Code (Ill Rev Stats 1965, c 24, § 11–13–1 et seq.) is the source of municipal legislative power in the field of zoning, and since such authority has not there been delegated directly or indirectly to a village, it does not have such power. 10 ILP, Cities, Villages, etc., § 1101; People ex rel. Skokie Town House Builders v. Morton Grove, 16 Ill2d 183, 189, 157 NE2d 33.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.