OLIVER CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, v. THE VILLAGE OF VILLA PARK, Defendant-Appellee.

Second District   No. 2—93—0220

Opinion filed February 10, 1994.

Dommermuth, Brestal, Cobine & West, Ltd., of Naperville (Edward J. Welch, of counsel), for appellant.

Law Offices of John N. Pieper, of Villa Park (John N. Pieper, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

The plaintiff, Oliver Construction Company, brought suit against the defendant, the Village of Villa Park, seeking a declaratory judgment that the defendant's zoning ordinance as applied to the plaintiff's property was unconstitutional and void. The plaintiff also sought to enjoin the defendant from interfering with its proposed development of the property. The court ruled in favor of the defendant, finding that the R-3 classification (duplex) was reasonable and bore a substantial relationship to the public health, safety, morals, and welfare. Further, the court ruled that the plaintiff had failed to prove that its proposed office use for the property was reasonable. The plaintiff appeals the judgment of the trial court. We affirm.

Paul Hoffman, the president of Oliver Construction Company, bought the subject property in 1955. The property is located in Villa Park at the southwest corner of Illinois Route 83 (a six-lane highway running north-south) and Highland Avenue (running east-west). The

property is a rectangular-shaped parcel extending $664^{1}/_{2}$ feet to the south of Highland Avenue. It has a depth of 100 feet at its north end and 105 feet at its south end. The property is divided into four lots (lots 187, 188, 189, and 190). Until 1983, there was approximately an eight-foot differential between the highest portion of the property along Riverside Drive to the west and the lowest portion of the property fronting Route 83. In 1983, the plaintiff partially filled the lower portion of the property.

When Hoffman bought the property, the area where it is located was zoned R-2 (single-family residential). In 1965, most of the area was rezoned to R-3 (duplex). The R-3 zoning district extends from just north of Washington Street on the south of the subject property to just south of Riverside Court on the north of the subject property, with a depth of 90 feet from the right-of-way line of Route 83. Duplex construction has recently begun within the R-3 district at the southwest corner of Washington Street and Route 83. There has been no other development within the R-3 zoning district.

The subject property is adjacent to an R-2 zoning district to the west. That area has been developed with single-family residences. There is a mixture of commercial and industrial uses across the street on the east side of Route 83.

On October 31, 1986, the plaintiff filed an application to rezone the property to O/R (office research). The defendant denied the application. The plaintiff subsequently filed an application for a planned unit development. The planned unit development was originally intended to be a 16,000-square-foot building with access off of Highland Avenue. The defendant's plan commission conditionally approved the plan subject to the building being reduced in size to not more than 12,000 square feet. The Commission also suggested that the style of the building be changed. The plaintiff drew up another plan incorporating the Commission's suggestions. However, the defendant denied the application.

The plaintiff brought this action following the defendant's decision to deny its application to rezone the property. At trial, the plaintiff presented expert witnesses who testified that the subject property was unfit for residential purposes due to its long and narrow shape and its proximity to Route 83 (the busiest highway in Du Page County with daily traffic of 109,000 vehicles). These witnesses stated that the highest and best use for the property was O/R (office research) and that the plaintiff's proposed office building would comply with the defendant's building codes for O/R and would not cause traffic problems. The defendant's expert witnesses, on the contrary, testified that O/R would not be compatible with the surround-

ing residential area and that the plaintiff's proposed office development provided for parking spaces which did not meet code requirements. These witnesses also stated that the office development would create potentially dangerous traffic problems for cars turning into Highland Avenue from Route 83.

Following the bench trial, the court ruled in favor of the defendant. The court determined that the plaintiff had failed to prove by clear and convincing evidence that the R-3 zoning of the plaintiff's property is arbitrary and unreasonable. The court also found that the plaintiff had failed to prove that its proposed use for the property is reasonable. The plaintiff filed this timely appeal.

■ As a preliminary matter, the plaintiff asks that we strike the additional statement of facts contained in the defendant's brief for failing to comply with the requirements of Supreme Court Rule 341(e)(6) (134 Ill. 2d R. 341(e)(6)) that they be stated fairly and accurately without comment. However, we find that nothing in the statement of facts is so misleading as to interfere with or preclude our review. Under these circumstances the statement of facts need not be stricken. *Village of Fox River Valley Gardens v. Lake County Forest Preserve District* (1992), 224 Ill. App. 3d 919, 924.

■ We proceed to address the merits of the appeal. A zoning ordinance, as a legislative judgment, is presumptively valid. (*Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 759.) The party challenging a zoning ordinance bears the burden of proving by clear and convincing evidence that the ordinance is arbitrary and unreasonable as applied to the subject property and bears no substantial relation to the public health, safety, morals, or welfare. (*Glenview State Bank*, 213 Ill. App. 3d at 759.) The party must also prove that the proposed use is reasonable. (*Glenview State Bank*, 213 Ill. App. 3d at 758.) Where there is room for a legitimate difference of opinion concerning the reasonableness of a zoning ordinance or when the question of reasonableness is fairly debatable, the courts will not interfere with the legislative judgment. (*Glenview State Bank*, 213 Ill. App. 3d at 759.) The judgment of the trial court is entitled to great weight and will not be reversed unless it is against the manifest weight of the evidence. *Glenview State Bank*, 213 Ill. App. 3d at 759.

■ In *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, our supreme court set forth six factors which may be considered in determining whether an ordinance is reasonable. They are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the diminution of the plaintiff's property

value promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the vicinity of the subject property. (*La Salle National Bank*, 12 Ill. 2d at 46-47.) In *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, the supreme court added two more factors to be considered: community need for the proposed use and the care with which the community had undertaken to plan its land-use development.

Although no one factor is determinative, we have held that the first factor, the existing uses and zoning of nearby property, is of "paramount importance." (*Glenview State Bank*, 213 Ill. App. 3d at 760.) The plaintiff contends that this factor weighs in its favor since the entire R-3 (duplex) zoning district is vacant as zoned. However, there was testimony at trial that duplex construction is currently under way within the R-3 district at the southwest corner of Washington Street and Route 83.

The plaintiff also argues that the subject property takes its character from the traffic along Route 83 and from the industrial and commercial uses on the east side of Route 83. In support of this argument, the plaintiff cites *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, in which our supreme court found that the traffic and nearby commercial uses established the character of Krom's property.

However, unlike the present case, the subject property in *Krom* *adjoined* a commercial zone. (*Krom*, 8 Ill. 2d at 112.) Here, the subject property is located entirely on the west side of Route 83, in a residential area. The properties on the east side of Route 83, across from the subject property, are industrial/commercial. We have repeatedly held that streets are reasonable lines of demarcation between residential and other uses, and the fact that a property is located on a main traffic artery or busy highway does not invalidate an ordinance restricting it to residential use. *Glenview State Bank*, 213 Ill. App. 3d at 761; *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 999.

The second factor to be considered is the extent to which property values are diminished by the particular zoning restriction. The plaintiff presented evidence that the subject property currently has a value of about $10,000, and that it would have a value of $125,000 to $320,000 if it were rezoned to O/R. The defendant presented no contrary evidence. However, proof of a very large difference in value is by itself insufficient to overcome the presumption of validity of the

zoning ordinance. (*Du Page Trust Co.*, 31 Ill. App. 3d at 999-1000; *St. Lucas Association v. City of Chicago* (1991), 212 Ill. App. 3d 817, 825.) Moreover, we note that the plaintiff bought the subject property knowing that it was classified for residential use. Purchasers who acquire property with full knowledge of its zoning classification should not expect the loss in value resulting from the denial of the proposed use to be a persuasive argument in securing the change. *Glenview State Bank*, 213 Ill. App. 3d at 762.

The third and fourth factors are often considered together and require the court to weigh the effects of the zoning restriction as it promotes the health, safety, morals or general welfare of the public against the hardship imposed on the property owner. When analyzing these factors, we are mindful that traffic problems created by a proposed use can impact on the health, safety and welfare of the public and can be a sufficient reason, in and of themselves, for denial of that use. (See *Haws v. Village of Hinsdale* (1979), 68 Ill. App. 3d 226, 232.) Maintenance of a residential community is also a factor in determining whether a zoning ordinance promotes the public health, safety and welfare. See *Gunderson v. Village of Hinsdale* (1987), 156 Ill. App. 3d 92, 104; *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 385-86.

The plaintiff argues that the zoning ordinance imposes a hardship on it by diminishing the value of its property, but that the ordinance does not promote the public health, safety, or welfare. The plaintiff also points to the testimony of its experts that the proposed use (an office building) would comply with the defendant's codes for O/R development and increase the values of the adjacent residential properties. These experts also testified that although the property is shown to be in a floodplain on the Federal Emergency Management Association (FEMA) map, it is actually not located in a floodplain. Even if the property is located in a floodplain, the plaintiff's experts testified that it is possible to build an office building on the site and store $1^1/2$ times the amount of stormwater currently capable of storage on the site. The plaintiff therefore contends that the public would benefit from the plaintiff's development.

However, the defendant presented expert testimony that the proposed office building would not comply with the defendant's O/R codes or the Americans with Disabilities Act. Further, the defendant's experts stated that the subject site is located in a floodplain and that it would be very expensive for the plaintiff to store the floodwaters in compliance with stormwater management requirements. The defendant also presented testimony that the office building would increase traffic on the residential streets near the subject site and would cause

a potentially dangerous traffic hazard at the intersection of Highland Avenue and Route 83. The problem arises from the office building's driveway on Highland Avenue, which is the only possible driveway location. In order to enter the building, cars travelling south on Route 83 would turn right (west) on Highland Avenue and then take a left turn into the driveway. That driveway is easily blocked by traffic moving east on Highland Avenue. Highland Avenue is not wide enough for any kind of a bypass movement. Therefore, traffic would back up onto Highland Avenue, creating a traffic hazard for cars turning onto Highland from Route 83.

The plaintiff contends that these traffic problems can be easily alleviated by widening Highland Avenue to three lanes. However, Richard Beebe, a transportation consultant, testified that widening Highland Avenue to three lanes would not eliminate all of the potential traffic hazards. Beebe stated that the proximity of the driveway to Route 83 violates traffic engineering standards and that a third lane is not much more than a "50% answer."

Ronald Bomba, a real estate appraiser and consultant, testified that the value of residential properties has a direct relationship to the amount of traffic their location experiences and that any use of the subject property other than single-family residential or duplex would have a negative impact on the surrounding residential properties. Rolf Campbell, a city planning and zoning consultant and landscape architect, testified that office development of the subject property would not be compatible with the single-family residential uses that abut the property along its western boundary.

Thus, contrary to the plaintiff's argument, there is evidence that the current R-3 zoning ordinance promotes the public health, safety and welfare by preserving the residential character of the neighborhood and preventing potentially dangerous traffic problems. The hardship created by the ordinance is the diminution in value of the plaintiff's property. However, we reiterate that proof of a very large difference in value is insufficient by itself to overcome the presumptive validity of a zoning ordinance. *Glenview State Bank*, 213 Ill. App. 3d at 761.

The fifth factor is the suitability of the subject property for the zoned purposes. The plaintiff argues that the subject property is not suitable for residential use due to its proximity to Route 83. However, as we stated above, the fact that a property is located on a busy highway does not invalidate an ordinance restricting it to residential uses. (*Glenview State Bank*, 213 Ill. App. 3d at 761; *Du Page Trust Co.*, 31 Ill. App. 3d at 999.) A high volume of traffic does not by itself impart a commercial character to the subject property. (See *Seith v.*

*City of Wheaton* (1967), 89 Ill. App. 2d 446, 450.) We further note that the testimony in this case regarding the unsuitability of the subject property for residential use was conflicting, as Ronald Bomba testified that in his opinion the highest and best use of the property was as currently zoned.

The sixth factor is the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. The plaintiff must establish that the property remains vacant and undeveloped *because* of the zoning classification. (See *Cech Builders, Inc. v. Village of Westmont* (1983), 118 Ill. App. 3d 828, 833.) The plaintiff argues that the entire R-3 zoning district, including the subject property, has been vacant as zoned since 1965. Paul Hoffman, the plaintiff's president, testified that he listed the property with Village Realty in 1965 and contacted builders "from time to time" to see if there was any interest in doing duplex work, but that he never received any offers due to the property's location along Route 83. However, Hoffman later admitted that he had made "no effort" to sell the property since 1983. We also note the testimony that duplex construction *has* begun within the R-3 zoning district, one block south of the subject property.

The seventh factor is the degree of care with which the community has undertaken to plan its land-use development. The defendant adopted a comprehensive land-use plan in 1984 after analyzing the community's economic development, environmental characteristics, housing, land use, school characteristics, and transportation. The plaintiff contends that the plan is "laughable," though, since the R-3 district does not follow street or property lines, and the plan ultimately adopted the already existing zoning map. However, the fact that the land-use plan adopted the zoning map, or that the zoning district in question does not follow street or property lines, does not necessarily prove that the community was careless in planning its land-use development. Rolf Campbell, the city planning and zoning consultant, stated at trial that the "comprehensive plan *** has gone through its proper considerations from a technical staff, it's gone through public hearings. There has been the opportunity for all people to put in input, all property owners included in that town or village, and as such it becomes one of the documents that you consider in making a determination of highest and best use." A comprehensive land-use plan such as the one adopted by the defendant is therefore entitled to a certain amount of respect, even though it is not sacrosanct. *City National Bank v. County of Kendall* (1986), 140 Ill. App. 3d 933, 936.

The final factor to consider is the community need for the proposed use. The plaintiff presented the testimony of J. Christopher Lannert, a planner and landscape architect, who stated that a community need existed since there was very little office space available. Tom Collins, an appraiser, also testified that a community need existed. Collins stated that he had checked the zoning map and found only a "couple" of O/R classifications within the community. However, neither Collins nor Lannert had performed any market studies as to the needs for office space. Collins also acknowledged that office use was permitted in C-1, C-2, and C-3 commercial districts within the community and that he had not examined those locations in order to determine whether offices were located there.

■ Considering all of the relevant factors, we conclude that the plaintiff has failed to overcome the presumptive validity of the zoning ordinance as applied to its property. There was evidence that the R-3 zoning complied with the comprehensive land plan, preserved the residential character of the neighborhood, and prevented a potentially dangerous traffic problem at the intersection of Highland Avenue and Route 83. Although there was testimony that the subject property was not suitable for residential use due to its location along Route 83, duplex construction has recently begun within the R-3 district at the corner of Washington Street and Route 83. The plaintiff, though, has made no effort to market its property since 1983. The trial court's judgment that the plaintiff had failed to prove that the R-3 zoning as applied to its property is arbitrary and unreasonable is not against the manifest weight of the evidence.

Further, the trial court's judgment that the plaintiff had failed to prove that its proposed use for the property was reasonable is not against the manifest weight of the evidence. The plaintiff's experts testified that an office building was the highest and best use for the subject property. The defendant's experts, on the contrary, testified that an office building would not be compatible with the surrounding residential properties and would cause a potentially dangerous traffic problem. The defendant's experts further questioned whether the proposed use complied with the Americans with Disabilities Act or with various provisions of the defendant's O/R building codes. There was also a conflict in the testimony as to whether the subject property was located in a floodplain, and whether the plaintiff's proposed use would comply with stormwater management requirements. The trial court was in the best position to weigh the contradictory, technical testimony, and its decision that the plaintiff failed to prove that its proposed use for the property was reasonable is supported by the evidence.

Finally, the defendant asks us to determine whether the easterly 10 feet of the subject property has been dedicated as a public right-of-way, or if that land is owned by the plaintiff but subject to an easement. We decline to address this question since it was not raised in the trial court and it is not relevant to the instant appeal.

For the foregoing reasons, we affirm the trial court.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.