HEINZ BOSSMAN *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF RIVERTON *et al.*, Defendants-Appellees (Casey's General Stores, Inc., Defendant-Intervenor).

Fourth District    No. 4—97—0047

Argued June 18, 1997.—Opinion filed August 29, 1997.

McCULLOUGH, J., dissenting.

Michael A. Myers (argued) and Thomas H. Wilson, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellants.

John M. Myers (argued), of Rabin, Myers & Hanken, P.C., of Springfield, for appellee Village of Riverton.

Carl O. Hoffee (argued) and R. Kurt Wilke, both of Barber, Segatto, Hoffee & Hines, of Springfield, for other appellees.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs sought a declaratory judgment that an ordinance rezoning neighboring property was unconstitutional. The trial court, in a one-sentence order, entered summary judgment for defendants. Plaintiffs appeal. We hold, based on the clear and convincing evidence contained in the record, that the rezoning was spot zoning. We reverse and remand with directions for the trial court to enter summary judgment in favor of plaintiffs.

The Village of Riverton (Village) is a community of 2,700 persons, located about 10 miles east of Springfield. At the southwest corner of Lincoln Avenue and Seventh Street in Riverton, in an area zoned R-1 (residential), the Charles R. Burris and Carol J. Burris Revocable Living Trust dated October 1, 1993 (Burris Trust), owned a portion of a residential lot, with a frontage on Seventh Street of 50 feet. The rest of the Burris Trust lot had been taken for Lincoln Avenue, which at one time was State Route 36. Immediately south of the Burris Trust lot, Georgeana Lyons owned a lot improved with a single-family home. Defendant-intervenor, Casey's General Stores, Inc. (Casey's), purchased the Burris Trust and Lyons properties, then filed a petition with the village board of trustees (Board), seeking reclassification of the properties from R-1 to C-1 (commercial). On December 4, 1995, the Board enacted ordinance 95-30, reclassifying the properties C-1.

Three of the plaintiff families (Bossman, Rapacz and Santarelli) own residential properties on the corners of Lincoln and Seventh; the other (Hibbett) owns a residential property that adjoins the Burris Trust and Lyons properties on the west. The Village was named a defendant in the declaratory judgment action, as were Lyons and the Burris Trust. Casey's was allowed to intervene as a defendant.

To the north of the Burris Trust and Lyons properties, on Seventh Street, there is residential zoning for approximately three blocks (700 feet), at which point the C-1 zoning for Riverton's downtown commercial district begins. To the east of the properties, on Lincoln Avenue, there is residential zoning for approximately three blocks (960 feet), at which point C-1 zoning begins for a commercial district around Lincoln Avenue's intersection with the interstate highway. To the south of the properties, on Seventh Street, there is residential zoning for a similar distance, after which there is agricultural zoning to the Village limits. All the property west of the properties to the Village limits (approximately 2,240 feet) is zoned residential. The

block on which the properties are located is residential, as are the adjacent blocks in all directions (there is only one long block to the south, with only one cross street before the agricultural zoning).

Casey's argued the integrity of the R-1 zoning had been destroyed before it entered the picture. The Interurban Restaurant is located across Seventh Street in the second block north of the Burris Trust and Lyons properties, in a building whose commercial use predated the adoption of the Village zoning ordinance in 1968. Across Seventh Street from the restaurant are an elementary school and church. The Village water plant (described in the Village's brief as "an industrial eyesore") is located across Seventh Street, south of the Burris Trust and Lyons properties. The land to the south of the properties is pretty much vacant. There is a Knights of Columbus Hall, a permitted special use, four blocks southwest of the Burris Trust and Lyons properties, on the west side of Third Street. There is a church west of the properties, on the north side of Lincoln Avenue, about $1^{1}/_{4}$ blocks from Seventh Street. Casey's also complained the local newspaper was operated out of a residence on Sixth Street (telephoning and typing for a weekly paper, printing done elsewhere), a dog grooming business was operated out of another residence on Sixth Street, and there was a commercial sign on the Bossman property across Seventh Street from the Burris Trust and Lyons properties (which plaintiffs described as "a small aged, weathered sign tacked to the Bossman's back yard wood privacy fence advertising the Bossman's furniture store in Springfield"). Lincoln and Seventh is the busiest intersection in town, but plaintiffs respond that this is a town of only 2,700 people.

Concern has been expressed over some types of local governmental action in zoning cases:

> "It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasijudicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. The rule is familiar enough that courts may not inquire into the motives or reasons on which the legislative body acted. [Citation.]

> It is because of this immunity from review that legislative bodies must confine themselves to the prescribing of general rules. If they may undertake to confer upon themselves authority to decide what in fact amount to individual or particular cases, the founda-

tions of our legal system will fast disappear." *Ward v. Village of Skokie*, 26 Ill. 2d 415, 424, 186 N.E.2d 529, 533 (1962) (Klingbiel, J., specially concurring). See also *Kotrich v. County of Du Page*, 19 Ill. 2d 181, 189-90, 166 N.E.2d 601, 606 (1960) (House, C.J., dissenting). In 1967, the Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 11—13—1 *et seq.*) was amended (1967 Ill. Laws 3335 (§ 11—13—1 *et seq.*)) to incorporate the views expressed in that special concurrence and dissent. *Geneva Residential Ass'n v. City of Geneva*, 77 Ill. App. 3d 744, 754, 397 N.E.2d 849, 856 (1979).

■ Sections 11—13—1.1 and 11—13—5 of the Illinois Municipal Code (Municipal Code) require that variances and special use permits be granted only in accordance with established standards (65 ILCS 5/11—13—1.1, 11—13—5 (West 1994)), after a public hearing and findings of fact (65 ILCS 5/11—13—1.1, 11—13—5, 11—13—11 (West 1994)). In municipalities over 500,000, the decision must be made by the zoning board of appeals, the corporate authorities may not overrule that decision, and an appeal lies under the Administrative Review Law. 65 ILCS 5/11—13—4, 11—13—13 (West 1994). Municipalities under 500,000 may utilize that same approach or may reserve the ultimate decision on variances and special use permits to themselves. 65 ILCS 5/11—13—5, 11—13—11 (West 1994). Any result that may be obtained through a variance or a special use permit may also be obtained through an amendment to the zoning ordinance, but the Municipal Code does not attempt to regulate zoning amendments, except to require a hearing and to require that in some cases amendments must be approved by a two-thirds vote of the aldermen holding office. 65 ILCS 5/11—13—14 (West 1994). The only real limitation on zoning amendments is the inquiry whether they may constitute spot zoning.

■■ The case of *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632 (1974), is often cited:

"Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citations.] Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must

be conclusive. [Citation.] In [*La Salle National Bank*] v. [*County of Cook*], 12 Ill. 2d 40, [46-47, 145 N.E.2d 65, 69 (1957),] we reviewed the considerations determining the validity of an ordinance as applied to a particular property and stated that 'among the facts which may be taken into consideration in determining the validity of an ordinance are the following: (1) The existing uses and zoning of nearby property, [citing cases], (2) the extent to which property values are diminished by the particular zoning restrictions, [citing cases], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citing cases], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citing cases], (5) the suitability of the subject property for the zoned purposes [citing cases], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [Citing cases.]' "

It is important to note that in *Evanston* the municipality *rejected* the property owner's attempt to rezone the property, and the supreme court affirmed the municipality's decision to stand behind its zoning ordinance. *Evanston* is not authority for the proposition that a court should give deference to a municipality's decision when it *grants* a property owner's request for special treatment and engages in spot zoning. See *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1030, 578 N.E.2d 57, 61 (1991). The Village cites *County of Cook* for the deference that should be given the legislative body. Interestingly enough, the court in that case found that the ordinance before it (the original ordinance) was arbitrary and void, and stated that a difference of opinion between the opposing expert witnesses did not require a finding that the reasonableness of the ordinance was debatable. *County of Cook*, 12 Ill. 2d at 47, 145 N.E.2d at 69.

■ "Spot zoning" is a change in zoning applied only to a small area, which is out of harmony with comprehensive planning for the good of the community; zoning that would violate a zoning pattern that is homogeneous, compact and uniform. *Chicago Title & Trust Co. v. Village of Skokie*, 60 Ill. App. 3d 221, 235, 376 N.E.2d 313, 324 (1978). This does not mean that every reclassification of a single tract is void *ipso facto*; rather, it must be determined whether such change is in harmony with a comprehensive plan for orderly utilization of property in the locality. The size of the rezoned tract or area is merely one factor to consider. *Fifteen Fifty North State Building Corp. v. City of Chicago*, 15 Ill. 2d 408, 418, 155 N.E.2d 97, 102 (1958) ("it is true that inconsistent zoning of small parcels is not to be encouraged"). Sometimes the original zoning ordinance has made a mistake

with regard to a single tract. Bringing that tract into harmony with the surrounding property is not spot zoning, or said another way, is not illegal spot zoning. However, the power to zone or rezone cannot be exercised to satisfy the individual desires of a few. *Cosmopolitan National Bank v. City of Chicago*, 27 Ill. 2d 578, 584-85, 190 N.E.2d 352, 356 (1963) (amendatory ordinance void where no change in general character or existing uses in neighborhood).

It would be difficult to find spot zoning in an area where conflicting uses were haphazardly mixed. Such mixing may exist either because little thought was given to the establishment of the districts or because other uses over time have been allowed to invade the districts. Nevertheless, the existence of a formal comprehensive plan is not essential to a finding of spot zoning. What is important is that the community in question has given care and consideration to the use and development of the land within its boundaries. *First National Bank v. Village of Vernon Hills*, 55 Ill. App. 3d 985, 990, 371 N.E.2d 659, 664 (1977). Of paramount importance is whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. *Truchon v. City of Streator*, 70 Ill. App. 3d 89, 93, 388 N.E.2d 249, 252 (1979). The existence of a comprehensive plan may justify what would otherwise be spot zoning. If the Village here had a comprehensive plan that looked to the construction of a convenience store and gas station in the area of Lincoln and South Seventh Street, this rezoning may not have been spot zoning. However, there clearly was no such plan and the actual zoning pattern in the area was uniformly residential.

A number of early cases are often cited for the statement that in determining the validity of an amendatory or revised ordinance, the factors to be considered are the same as those involved in ascertaining the legality of the initial ordinance. *Garner v. City of Carmi*, 28 Ill. 2d 560, 564, 192 N.E.2d 816, 818-19 (1963) (amendatory ordinance found invalid); *Exchange National Bank v. County of Cook*, 25 Ill. 2d 434, 441, 185 N.E.2d 250, 254 (1962) (refusal to amend ordinance sustained). That statement seems to have originated in *Trust Co. v. City of Chicago*, 408 Ill. 91, 100, 96 N.E.2d 499, 504 (1951), where the court was making the point that amendments to a zoning ordinance could be struck down just like the original zoning ordinance itself, that the repeal of an ordinance is not immune from constitutional attack. (It has been argued that after property owners have relied on the original ordinance it cannot be changed.) The amendatory ordinance in *Trust Co.* was in fact found to be arbitrary and unreasonable. The inference cannot be drawn from these cases that spot zoning stands on equal footing with other zoning. "An amendatory

zoning ordinance cannot be sustained if the evidence fails to show that it was passed for the public good, but instead tends to show that it was passed in deference to the wishes of certain individuals." *Trust Co.*, 408 Ill. at 100-01, 96 N.E.2d at 504-05.

Casey's argues its project will bring additional jobs, additional tax revenue, and competition to Riverton, citing *Westwood Forum, Inc. v. City of Springfield*, 261 Ill. App. 3d 911, 918-19, 634 N.E.2d 1154, 1160 (1994). One of the justifications for a zoning ordinance is that it "promotes the health, safety, morals or general welfare of the public." *County of Cook*, 12 Ill. 2d at 47, 145 N.E.2d at 69. A municipality that requires additional housing for its residents, for example, may zone single-family areas for multifamily use. *Trust Co.*, 408 Ill. at 101-02, 96 N.E.2d at 505. Public waterworks, fire stations, hospitals and the like may have a substantial relationship to the public welfare. See 83 Am. Jur. 2d *Zoning & Planning* §§ 78, 79, 149, 150 (1992). A municipality may change its ordinance to include uses not originally provided. *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest*, 27 Ill. App. 3d 303, 320-21, 326 N.E.2d 473, 486-87 (1975) (mobile home park). The present case is not an exclusionary zoning case, however. There is another gas station and another grocery store in Riverton, and there are C-1 areas within a reasonable distance of Lincoln and South Seventh Street. The problem here is not a lack of C-1 areas; the problem is that the particular property where Casey's wants to be located is zoned R-1.

Casey's argues that the Village may abandon its zoning ordinance whenever it sees any benefit in doing so. That argument is mistaken. Not every perceived benefit will justify rezoning, only those benefits that constitute legitimate objectives of zoning. See 83 Am. Jur. 2d *Zoning & Planning* §§ 70 through 127 (1992). The argument that rezoning would increase the tax base, as opposed to conserving the tax base, has been rejected. "[S]uch a justification is totally illusory and totally violative of all the basic principles of zoning." *Concerned Citizens for McHenry, Inc. v. City of McHenry*, 76 Ill. App. 3d 798, 806, 395 N.E.2d 944, 950 (1979); see also *La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43, 58, 636 N.E.2d 1157, 1166 (1994); 83 Am. Jur. 2d *Zoning & Planning* § 83 (1992).

One of the considerations in a rezoning case is whether the property will be more valuable with the rezoning. That consideration has been downplayed, however, since increased value exists in virtually all reclassification cases. *Suhadolnik v. City of Springfield*, 184 Ill. App. 3d 155, 176, 540 N.E.2d 895, 907 (1989); *Evanston*, 57 Ill. 2d at 429-30, 312 N.E.2d at 633. That is why the owner seeks reclassification—in order to increase the value of his property. Casey's varies

the argument somewhat in this case. Casey's does not argue the increased value to itself, but attempts to focus on the corresponding value to the community. Every new business will bring some additional jobs, additional tax revenue, and competition. Again, that should not be dispositive, since it is true in virtually all reclassification cases.

The control or restriction of competition is not a proper or lawful zoning objective. *Cosmopolitan National Bank v. Village of Niles*, 118 Ill. App. 3d 87, 91, 454 N.E.2d 703, 705 (1983). Many zoning decisions have some indirect effect on competition, but it is improper to directly legislate economic protection for one business "against the normal competitive factors which are basic to our economic system." *Exchange National Bank v. Village of Skokie*, 86 Ill. App. 2d 12, 21, 229 N.E.2d 552, 556 (1967); see also 83 Am. Jur. 2d *Zoning & Planning* § 81 (1992). Encouragement of one competitor amounts to discouragement of others. Competition should be managed by market forces, not by local government, which should not be placed in the position of deciding whether more (or less) competition is a good thing. If the rezoning here is allowed to stand, the Village will have given Casey's competitive advantages that the existing gas station does not have. The existing gas station is required to operate out of a C-1 area. Casey's would have a monopoly at the Burris Trust and Lyons location, as no other gas station could locate near it because of the surrounding R-1 zoning.

Defendants' primary argument is that plaintiffs have conceded the ultimate issue in this case: whether there is room for a "legitimate difference of opinion" or whether such "question of reasonableness is fairly debatable." Plaintiffs' expert, Chuck Kirchner, a land-use planner, testified the zoning in the area is homogeneous, compact and uniform, and that the character of the neighborhood is residential. He testified the action of the Village was arbitrary and constituted spot zoning. On cross-examination, Kirchner was asked how a community that lacked a comprehensive plan could ever make a rational decision in a zoning case, and he responded that they would have to listen to each side of the case. Kirchner was asked if the result here was irrational, and he responded "I don't know if it was irrational, it was incorrect." Elsewhere Kirchner was asked if there were arguments in favor of Casey's, and he replied there were no favorable *zoning* arguments. Fairly read, Kirchner's remarks indicated there were arguments that Casey's would be a desirable addition to Riverton, if it were properly located, but those arguments should not be considered in making a rezoning decision. Kirchner also made the statement, "there was an honest difference of opinion

as to whether this was suitable or not." Assuming Kirchner was referring to the views of the Board, and not simply the public at large, it is clear he was suggesting that the Board honestly went outside the factors it could legitimately consider in order to do what it thought best. We disagree that Kirchner conceded the primary issue in this case.

Plaintiffs presented the testimony of Ronald Ladley, a realtor, that the Casey's project would devalue the Santarelli property by 10% to 20% and would also devalue the property of the other plaintiffs. On cross-examination Ladley was asked this question:

"Q. Because of all the factors you mentioned or agreed with about the benefit to the community—the sales tax, the property tax, the convenience of shopping, the jobs—you would agree that this issue of rezoning—on the issue of rezoning, there is room for a honest difference of opinion, would you not?

A. Sure."

Plaintiffs also called a real estate appraiser, Edward H. Hofferkamp, who testified the impact of the Casey's store on neighborhood property values could be substantial, extending even beyond the four corners of the intersection. Hofferkamp on cross-examination was asked about the general benefits to the community and responded that "the impact on the surrounding properties, the negative impact outweighs the positive in this location." Hofferkamp was then asked:

"Q. But there is room for a fair debate on this subject?

A. I guess that is why we're all here.

Q. So you would agree with that?

A. Yes."

When their testimony is viewed in its entirety, plaintiffs' experts did not concede the primary issue in this case. We reject the argument we should decide this case on the basis of a few out-of-context statements and ignore the overall testimony of plaintiffs' expert witnesses.

In *Westwood Forum*, we upheld a rezoning ordinance, but that case did not involve spot zoning. The rezoned area in that case was not a single tract, but a 93.6-acre tract, and the rezoning was consistent with the comprehensive plan. *Westwood Forum*, 261 Ill. App. 3d at 913, 919, 634 N.E.2d at 1156, 1160. In *Truchon*, the appellate court reversed a finding of spot zoning, but there was significant evidence in that case that the rezoning from residential to commercial was in conformity with the character of the neighborhood and existing uses and zoning of nearby property. *Truchon*, 70 Ill. App. 3d at 93, 388 N.E.2d at 252. There is no such evidence in the present case. There was also a finding of estoppel in *Truchon*, where the plaintiffs waited seven months after enactment of the ordinance to file their suit, dur-

ing which time defendant spent significant sums in reliance on the rezoning. *Truchon*, 70 Ill. App. 3d at 94, 388 N.E.2d at 252-53. The present case is most like *Concerned Citizens*, where the appellate court found a rezoning of undeveloped land from R-3 single family to B-1 commercial retail district constituted spot zoning. Although the area was not totally and uniformly residential, the existing variations were held not to alter the essentially residential character of the property. *Concerned Citizens*, 76 Ill. App. 3d at 805, 395 N.E.2d at 949. The property owner also knew at the time he bought the property that it was restricted to residential use. *Concerned Citizens*, 76 Ill. App. 3d at 805, 395 N.E.2d at 949.

Defendants' argument that the surrounding uses are not uniform is without merit. Schools, churches, and home occupations are generally permitted in residential areas. 83 Am. Jur. 2d *Zoning & Planning* § 220 (1992). The Village itself argues that the surrounding uses are not uniform ("the surrounding *uses* are indubitably commercial—a newspaper operation, a dog grooming business, and a commercial sign" (emphasis in original)). If the Village truly believes that, it might consider rezoning the entire area, instead of requiring everyone except Casey's to abide by R-1 zoning. See also *Central Transport, Inc. v. Village of Hillside*, 210 Ill. App. 3d 499, 515, 568 N.E.2d 1359, 1369 (1991) (a municipality is estopped from claiming that its own ordinances are invalid). Although the existence of a substantial number of nonconforming uses (uses predating the ordinance) may be destructive of the homogeneity of a residential area, the testimony in this case disclosed only one nonconforming use, the Interurban Restaurant, more than a block away from the Burris Trust and Lyons properties. The existence of nonconforming uses generally cannot be used to justify a rezoning of a single tract. *Littlejohn v. City of North Chicago*, 259 Ill. App. 3d 713, 720-21, 631 N.E.2d 358, 364 (1994) (goal is to eliminate nonconforming uses, not to expand them).

■ The evidence is overwhelming in this case that the existing uses and zoning of nearby property is residential, that plaintiffs' property will be reduced in value by this rezoning, and that the Burris Trust and Lyons properties are suitable and being used for residential purposes. See *Evanston*, 57 Ill. 2d at 429-30, 312 N.E.2d at 633. It is true the Burris Trust property has been vacant for some time, but it appears that vacancy is due to its small size, the fact that a portion of the lot was taken for Lincoln Avenue. The Burris Trust lot is not suitable for any use by itself, but only in conjunction with the adjoining Lyons lot. For the fact of vacancy to be significant there must be proof that improper zoning caused the vacancy, not

that the property remained vacant merely because no one attempted to develop it or because of some other reason not zoning related. *Suhadolnik*, 184 Ill. App. 3d at 176, 540 N.E.2d at 907. Casey's knew of the R-1 zoning when it purchased the property. *Evanston*, 57 Ill. 2d at 430, 312 N.E.2d at 633. Rezoning would clearly cause deterioration of the surrounding residential properties and permit the transformation of those properties to other uses. *Evanston*, 57 Ill. 2d at 430, 312 N.E.2d at 633. There has been no change in the general character or existing uses in the neighborhood of the Burris Trust and Lyons properties.

The rezoning here was spot zoning. There is clear and convincing evidence that the rezoning ordinance in this case, as applied to plaintiffs, is arbitrary, unreasonable, and bears no substantial relation to public health, safety, morals, or welfare.

After the witnesses in this case were deposed, both sides filed motions for summary judgment. See 735 ILCS 5/2—701(b) (West 1994) ("if a declaration of rights is the only relief asked, the case may be set for early hearing as in the case of a motion"). All the evidence that the parties wished to present was before the court. It would have been better if the parties had filed a stipulation with the court that this case be decided on the depositions, without any further presentation of evidence, but the intent to follow that procedure seems clear. Even if there is some issue of fact, if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered. *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971). We conclude that summary judgment is appropriate in this case for whichever side prevailed.

Accordingly we reverse and remand with directions that the trial court enter summary judgment in favor of plaintiffs.

Reversed and remanded with directions.

KNECHT, J., concurs.

JUSTICE McCULLOUGH, dissenting:

The issue is whether the entry of summary judgment for defendants was improper because (1) either a genuine issue of material fact existed or (2) the documents submitted to the trial court indicate the plaintiffs were entitled to summary judgment. Plaintiffs argued the rezoning ordinance was arbitrary, capricious, and without

substantial benefit to the public health, safety, or welfare based on their analysis of the factors referred to in zoning cases and that their experts had not admitted the ultimate issue, *i.e.*, the rezoning was fairly debatable. The trial court may draw inferences from undisputed facts, but should not grant summary judgment if reasonable persons could draw divergent inferences from undisputed facts. *Pyne v. Witmer*, 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308 (1989).

The parties in this case relied on the factors enumerated in *County of Cook*, 12 Ill. 2d at 46-47, 145 N.E.2d at 69. The majority determines that the decision in *County of Cook* does not stand for the proposition that deference should be given to the zoning ordinance. That was never argued by the parties, and the case relied on by the majority, *Rodriguez* (217 Ill. App. 3d at 1030, 578 N.E.2d at 61), (1) involved the question of the propriety of a dismissal of a complaint; (2) while questioning the application of the *County of Cook* factors to cases not involving a property owner's challenge to the original zoning, never said no deference was to be given the municipality's legislative enactment; and (3) nevertheless considered the sufficiency of the complaint in light of the *County of Cook* factors. Furthermore, this court has applied the principles announced in *County of Cook* to a case involving neighbors challenging a rezoning ordinance and required that the presumption of validity of the rezoning ordinance be overcome by clear and convincing evidence. *Westwood Forum*, 261 Ill. App. 3d at 912-17, 634 N.E.2d at 1156-59. In addition to the *County of Cook* factors, courts should also consider the need for the use proposed by the property owner and the care with which the community has undertaken its development planning. *Westwood Forum*, 261 Ill. App. 3d at 917, 634 N.E.2d at 1159. No one factor is determinative, and a primary concern is whether the property in question is zoned in conformity with surrounding uses and whether those uses are uniform and established. *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 309, 388 N.E.2d 388, 391 (1979). Where there is room for a legitimate difference of opinion concerning the reasonableness of the zoning classification or the question of reasonableness is fairly debatable, courts will not interfere with the legislative classification. *Bredberg v. City of Wheaton*, 24 Ill. 2d 612, 625, 182 N.E.2d 742, 748 (1962); *Bullock v. City of Evanston*, 5 Ill. 2d 22, 34, 123 N.E.2d 840, 846 (1954); *Oliver Construction Co. v. Village of Villa Park*, 257 Ill. App. 3d 750, 753, 629 N.E.2d 199, 202 (1994).

The majority finds that the ordinance constituted spot zoning. Although spot zoning is looked on with disfavor (*Reskin v. City of Northlake*, 55 Ill. App. 2d 184, 189-90, 204 N.E.2d 600, 603 (1965)), the current legal philosophy about spot zoning is that it is not *per se* illegal,

but it may be improper depending on the application of the factors relating to the reasonableness of the zoning ordinance to the facts of the particular case (101A C.J.S. *Zoning & Land Planning* § 44 (1979)). In *Truchon* (70 Ill. App. 3d at 93, 388 N.E.2d at 252), the trial court's invalidating of the ordinance rezoning a parcel from single-family residential to commercial to accommodate a liquor store and bar, argued to be impermissible spot zoning, was reversed, where the appellate court found room for a reasonable difference of opinion.

All experts, including plaintiffs' experts, agreed that the rezoning was the result of an honest difference of opinion on its suitability. Defendants' experts clearly agree the action was appropriate and not arbitrary and capricious. Plaintiffs' experts disagree with the action of the Village to varying degrees. Ladley agreed that there was room for an honest difference of opinion on the question of rezoning the subject properties. Hofferkamp testified that the negative impact on the surrounding properties outweighed the positive aspects of rezoning this site, but reluctantly conceded there was room for a fair debate on the question. Kirchner, however, was more evasive. He stated there was an honest difference of opinion, noting the vote of the Village's board of trustees. He also stated that he would not testify it was irrational, but would testify it was improper and further that anyone with his background and school of thought would agree it was improper. According to Kirchner, there may be reasonable argument about getting new business into the Village, but not about zoning these particular pieces of property. To Kirchner, zoning was not debatable in terms of its impact on residential values "and those sorts of things." However, Kirchner's testimony that like-minded persons would agree and that the decision was not irrational does not refute the inference that the issue of rezoning was fairly debatable.

If plaintiffs cannot prove a crucial element of their case, summary judgment is appropriate. Uncontradicted expert testimony in a deposition may be used as a basis for summary judgment where it demonstrates no genuine issue of material fact remains and a verdict would have to be directed. *Grote v. Estate of Franklin*, 214 Ill. App. 3d 261, 269-70, 573 N.E.2d 360, 365-66 (1991). In spite of Kirchner's testimony, the only reasonable inference to be drawn from the evidence is that there was room for legitimate differences of opinion concerning the reasonableness of the classification and that the question of reasonableness of the rezoning was fairly debatable.

It is obvious from the testimony that the question of whether the rezoning of the subject properties was in conformity with surrounding zoning and whether the surrounding zoning was uniform and

established depended on how large the expert drew the circle around the subject property. However, the old commercial district began only 940 feet away. The Knights of Columbus club was also nearby.

There was some opinion that plaintiffs' property values would diminish, but there was no evidence by how much. No appraisals were submitted or made. There was some evidence that the value of plaintiffs' properties as residential property was diminished by the traffic in the area without the rezoning. There was no evidence that rezoning would adversely affect health, safety, or morals, although there were speculative statements that an increase in criminal activity might arise from the location of a convenience store in this area. The evidence was consistent, however, that the Casey's would enhance the general welfare of the public. This is the best location in the town for this type of business because of the traffic flow. It would increase income to the Village and promote employment. One of the lots had been vacant for a long time. The other had an older home. There was testimony that the vacant lot was less suitable for residential purposes because of the traffic in the area. The community had a substantial need for this type of commercial development from a competition and a consumer's benefit standpoint. The hardship imposed on plaintiffs does not necessarily outweigh the relative gain to the public.

While balancing these factors would appear to create a question of fact, this balancing clearly establishes that there was room for a legitimate difference of opinion concerning the reasonableness of the rezoning and that the question of the reasonableness of the rezoning was fairly debatable, as a matter of law. Plaintiffs have not met the clear and convincing burden of proof of the invalidity of the ordinance. The burden of proof is heavy, and it is not met simply by putting on witnesses who would testify that, if they had the authority, they would not have voted for the ordinance. *Siegel v. City of Chicago*, 127 Ill. App. 2d 84, 92, 261 N.E.2d 802, 806 (1970). The judgment of the circuit court of Sangamon County should be affirmed.